IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| FEDEX CORPORATION, ) | |
| FEDEX CORPORATION ) | |
| EMPLOYEES' PENSION PLAN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | |
| THE NORTHERN TRUST COMPANY, ) | Jury Trial Demanded |
| and NORTHERN TRUST ) | |
| INVESTMENTS, N.A., ) | |
| ) | |
| Defendants. ) | |

_____

**COMPLAINT**
_____

**Summary of the Action**

1.  FedEx Corporation ("FedEx"), as the Administrator of the FedEx Corporation Employees' Pension Plan ("Plan") within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), brings this action against the Northern Trust Company ("NTC") and Northern Trust Investments, N.A. ("NTI") for breach of fiduciary duty under ERISA and breach of the federal common law of contract. The actions result from securities lending of the Plan's assets and the refusal of NTC to return those assets to the Plan, as previously agreed to between the parties.

2.  NTC is the trustee for the FedEx Corporation Employees' Pension Trust, which contains the assets of the Plan. The Plan invested certain assets in two Northern Trust collective investment funds, both managed by NTI. Contrary to the requirements of the Trust Agreement under the Plan, the Plan's Investment Guidelines and specific

instructions from Plan fiduciaries to avoid securities lending of the Plan's assets, both funds were involved in substantial securities lending.  Northern Trust knew that one of the reasons for the Plan fiduciaries' aversion to securities lending was that it caused the risk profile of the Plan's investments to deviate in a material way from the desired risk profile and other performance benchmarks used for assets of the Plan.

3. Once FedEx became aware of the extent of the securities lending, it requested, and NTC agreed to a full return of all Plan assets in both Northern collective funds.  NTC had informed FedEx that the value of the Plan's interests in the two funds was 99% of book value.  Consistent with that understanding, NTC prepared a direction letter for FedEx specifying that NTC would return the book value of the Plan's assets in the collective funds (the book value of the loaned and unloaned securities) over the course of 12 calendar days.  NTC, however, has refused to honor this agreement and has rejected all of FedEx's demands to honor it.

4. This action seeks monetary damages resulting from Defendants' breach of fiduciary duty, breach of the federal common law of contract and breach of the settlement agreement with FedEx.  Alternatively, this action seeks injunctive relief requiring Defendants to redeem Plan assets in the manner and amount in which it agreed.

## The Parties

5. Plaintiff FedEx Corporation is a corporation organized and existing under the laws of the state of Delaware with its principal place of business located in Memphis, Tennessee.  It is the Plan Administrator of the Plan pursuant to ERISA Section 3(16), 20 U.S.C. § 1002(16), and a fiduciary to the Plan pursuant to ERISA Section 3(21), 29 U.S.C. § 1002(21).

6. Plaintiff FedEx Corporation Employees' Pension Plan is a defined benefit employee pension plan for eligible participants. The Plan is qualified under section 401(a) of the Internal Revenue Code, is operated in compliance with ERISA, and is established and maintained for the sole purpose of providing benefits to eligible participants or their beneficiaries. FedEx Corporation and certain of its subsidiaries are participating employers in the Plan. The Plan is joined here for purposes of according complete relief for defendants' breaches.

7. Defendant NTC is an Illinois state banking corporation with its principal place of business in Chicago, Illinois. NTC is the trustee of the FedEx Pension Trust and is a fiduciary with respect to the Plan. NTC is also the securities lending agent for NTI.

8. Defendant NTI is an affiliate of NTC. NTI is a national banking association with its principal place of business in Chicago, Illinois. NTI is a named fiduciary with respect to the Plan. NTI is the trustee and manages the collective funds at issue in this case—the NTGI-QM Collective Daily Long Term Government Bond Index Fund (the "Bond Index Fund") and NTGI-QM Collective Daily Russell 2000 Index Fund (the "Russell Index Fund").

## Jurisdiction and Venue

9. This Court has personal jurisdiction over defendants because defendants have continuous and systematic contacts with this district, transact business in this district, and entered into agreements with Plaintiffs in this district. This Court has subject matter jurisdiction over this matter under ERISA, 29 U.S.C. § 1132(e)(1).

10. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) because the Plan is administered in this district.

**Facts**

**The Trust Agreement Between FedEx and NTC**

11. On or about May 10, 1982, FedEx and NTC entered into a Trust Agreement. Under the Trust Agreement, FedEx established the FedEx Pension Trust as the funding medium for the FedEx Pension Plan and NTC agreed to be the trustee and custodian of the assets of the FedEx Pension Trust. The Trust Agreement was amended and restated via the May 31, 2001 Amended and Restated FedEx Corporation Employee's Pension Trust.

12. Under the Trust Agreement, NTC is a fiduciary with respect to the Plan.

13. The Trust Agreement outlines NTC's fiduciary duties to the FedEx Pension Plan as follows:

> (a) the powers of the Trustee shall be exercisable for the exclusive purpose of providing benefits to the Participants and Beneficiaries under the Plan and in accordance with the standards of a prudent man under ERISA;
> (b) the Trustee shall diversify the investments of that portion of the Trust fund of which it has investment responsibility so as to minimize the risk of large losses;
> (c) the Trustee shall, with respect to that portion of the Trust Fund for which it has investment responsibility, follow the investment guidelines established by [FedEx] and shall act in accordance with the direction of [FedEx] given in exercise of [FedEx's] responsibility.

14. The Trust Agreement specifically provides that NTC may lend assets of the Plan *only* if it enters into a written agreement with FedEx allowing such securities lending consistent with Department of Labor Prohibited Transaction Exemption 81-6 or any successor exemption.

15. The FedEx Corporation Retirement Plan Investment Board ("RPIB") was ultimately responsible for selecting investment managers for assets of the Plan,

transferring assets among separate accounts, and monitoring the investments of the Plan. The RPIB consists of seven FedEx Corporation employees.

## The Northern Trust Bond Index Fund

16.     In or around May 2003, the RPIB terminated one of the Plan's investment managers and began looking for a safe fixed income index fund in which to invest certain Plan assets until it could locate and hire another investment manager.

17.     The RPIB asked NTC whether it had such a fund and NTC responded that it did—the Bond Index Fund.  NTC advised the RPIB that the Bond Index Fund met its need for a safe index fund and tracked the Lehman Brothers Long Term Government Bond Index.

18.     At the time of this recommendation, NTC was well aware of FedEx's objection to securities lending involving its Plan.  In or around February 1995, certain FedEx assets had been invested in a fund that was engaged in securities lending.  Because of the insolvency of the securities borrower, FedEx had trouble redeeming its assets from the fund.  As a result of this episode, the RPIB had advised NTC that it did not want any of the Plan's assets involved in securities lending because any potential reward was not worth the risk to the Pension Plan.  Nevertheless, at the time NTC recommended the Bond Index Fund to the RPIB, and RPIB informed it that it would accept that recommendation, NTC did not inform the RPIB that the Bond Index Fund engaged in securities lending.

19.     On the contrary, NTC represented to the RPIB that the "primary objective" of the Bond Index fund was to invest in a portfolio representative of the long term government securities sector of the United States bond and debt market, as characterized

by the Lehman Brothers Long Term Government Bond Index.  NTC also represented that the Bond Index Fund would avoid "illiquid securities;" specifically, NTC represented that the Bond Index Fund would invest 83.6% of its assets in US Treasury securities and 16.4% in US Agency securities.  While the fund's description stated that the fund "may" participate in securities lending, there was no discussion by NTC of the extent of that lending or the probability of such lending being used by NTC or NTI, notwithstanding NTC's knowledge of the RPIB's attitude towards securities lending.

20. The Bond Index Fund was part of the Northern Trust Quantitative Management Collective Funds Trust ("Collective Trust").  NTI had sole investment discretion as to the assets invested in the Collective Trust, including the Bond Index Fund.  No FedEx fiduciary had any control over the investment process or over the investment decisions of NTI with regard to the Bond Index Fund.

21. Following the RPIB's decision to accept NTC's recommendation, on or about May 27, 2003, the RPIB requested that NTC transfer certain Pension Trust assets to the Bond Index Fund, at that time called the "NTQA Long-Term Government Bond Index Fund."

22. In or around May 2004, NTC approached the RPIB with a proposal that it allow NTC to lend assets of the Plan.  The RPIB again advised NTC that FedEx was not interested in securities lending because any benefits provided by securities lending were not worth the risks associated with even traditional securities lending programs.  In that meeting, NTC did not indicate that Plan assets in the Bond Index Fund were involved in securities lending.

23.     The RPIB never executed a written securities lending agreement authorizing NTC or NTI to loan out Pension Trust assets.

## The Russell 2000 Index Fund

24.     On or about December 29, 2006, the RPIB, through its delegate, directed NTC to establish a "Separate Investment Account" and invest Plan assets in the Russell Index Fund.

25.     The December 29, 2006 direction letter indicated that the Russell Index Fund may lend securities and appointed NTC as its securities lending agent. The letter also required that NTC redeem, "without penalty," all Plan assets from the Russell Index Fund within 30 days following receipt of notice from an appropriate fiduciary that the Plan's fiduciaries no longer desired the assets to be involved in securities lending. The December 29, 2006 direction letter is attached as Exhibit A.

26.     The Russell Index Fund was also part of the Collective Trust and, therefore, NTI was also the trustee and manager of the assets in the Russell Index Fund. As such, it was a named fiduciary with respect to the Russell Index Fund, the FedEx Pension Trust and the FedEx Pension Plan. NTI had sole investment discretion as to the Russell Index Fund. FedEx had no control over the investment process or over the investment decisions of NTI with regard to the Russell Index Fund.

27.     In recommending its affiliated Russell Index Fund, NTC represented that the Fund's objective was to approximate the overall performance of the Russell 2000 index and that it would eliminate from the fund any stock which it, at any time, deemed to have an inordinately high degree of credit risk. NTC also represented that the Russell Index Fund would be rebalanced from time to time in order to minimize the expected or

predicted deviation between the performance of the Fund and the performance of the Russell 2000 Index. Despite its knowledge of FedEx's attitude towards securities lending, NTC did not discuss with the RPIB the extent of the Fund's securities lending.

## The Securities Lending Problems With the Index Funds

28. In early September 2008, the RPIB decided to change its overall investment strategy with regard to the Plan's assets. As part of this new strategy, the RPIB decided to move away from the Bond Index Fund to a separately managed account.

29. At or around mid-September 2008, RPIB directed NTC to transfer all of the Plan's assets from the Bond Index Fund to the new investment manager's account.

30. NTC advised FedEx that it could not immediately perform the transfer due to the effects of the Bond Index Fund's securities lending. For the first time, FedEx learned that over 80% of the Plan's assets in the Bond Index Fund were loaned out to borrowers and that the cash collateral held in return for the securities was invested in a pool of securities (the "Core USA fund") also, on information and belief, managed by NTI. NTC also disclosed that the Core USA fund securities were riskier, largely illiquid and more volatile than the bonds which were purchased by the Bond Index Fund to match its stated risk/return objectives.

31. NTC advised FedEx that it needed to sell the securities in the Core USA fund to obtain the cash needed to retrieve the loaned securities. However, the investments of the Core USA Fund were not worth enough money to enable the Collective Trust to obtain sufficient cash to recall the loaned securities. Therefore, defendants refused to immediately redeem the full value of the Plan's assets in the Bond Index Fund.

32. At or around the time NTC advised FedEx about the problems with the Bond Index Fund, NTC also advised FedEx about similar problems with the Russell Index Fund. NTC advised FedEx that over 50% of the FedEx Pension Trust's assets in the Russell Index Fund were loaned out to borrowers and that the cash collateral held by NTC in return for the loaned securities was invested in the same Core USA fund which was illiquid or severely impaired due to the financial crisis.

33. On or about September 19, 2008, NTC declared a collateral deficiency in the Core USA fund. In other words, because of losses in the Core USA fund securities, the assets in the collateral pool were not sufficient to repay the borrowers of the original loaned securities.

34. To remedy the collateral deficiency, NTC booked a receivable to the Core USA fund payable from each investor in the Collective Fund, including investors in the Bond Index Fund and Russell Index Fund, to restore the value of the Core USA fund to a market to book value ratio of 1:1. NTC told FedEx that the loss in value to the Plan's assets resulting from the collateral deficiency was $1 million in the Russell Index Fund and $8 million in the Bond Index Fund.

35. Despite NTC's knowledge of FedEx's investment objectives and its aversion to securities lending, it did not advise FedEx that 80% of the Bond Index Fund or 50% of the Russell Index Fund would be involved in securities lending or that any collateral obtained for the loaned securities would be invested in securities with a higher aggregate risk than the loaned securities. Nor did NTC inform FedEx that the extent of securities lending in the index funds held under the Collective Trust would cause such funds to diverge substantially from the performance and risk profile of their benchmark

indexes, or of the risk that assets held in the Core USA fund would be insufficient to obtain the return of loaned securities to honor redemption requests.

### NTI's Agreement to Fully Redeem the FedEx Pension Trust Assets From Both Index Funds

36. After learning about the problems with the index funds, FedEx demanded from NTC and NTI a complete withdrawal of the Plan's assets from both index funds.

37. In early October 2008, NTI offered, as a compromise to FedEx's demand for a complete and immediate withdrawal, to fully redeem in cash or in kind all of the Plan's assets (that is, the original loaned and unloaned US Treasury securities or the value of them) from the Bond Index Fund in eight approximately equal installments over an eight day period beginning on October 15, 2008. FedEx accepted NTI's offer.

38. NTI and FedEx also reached a compromise that NTI would fully redeem in cash or in kind all of the Plan's assets (that is, the original loaned and unloaned securities or the value of them) from the Russell Index Fund in four approximately equal installments over a four day period beginning on October 27, 2008.

39. To process the withdrawal, NTC prepared a direction letter for FedEx to sign and send back to NTC. On or about October 3, 2008, FedEx sent the signed direction letter to NTC directing NTC to make the eight redemptions from the Bond Index fund. NTC acknowledged receipt of the letter and agreed to begin the withdrawal process as agreed. True and correct copies of the letter and NTC's acknowledgement and agreement are attached as Exhibits B and C.

40. On October 14, 2008, the day before the first redemption installment, NTC contacted FedEx and advised that it would not honor its agreement to redeem the Plan's assets in the manner to which it had agreed. Instead, NTC offered FedEx the following

withdrawal option: Recall FedEx's share of the loaned securities in each fund; pay back the borrowers with a portion of the cash proceeds received from redemption of the loaned and unloaned securities; give FedEx the remaining proceeds (in cash or in kind) left over after the borrowers are repaid; give FedEx its pro rata share of the unimpaired Core USA securities; and give FedEx its pro rata share of the impaired Core USA securities.

41. NTC's current withdrawal option essentially requires that FedEx use the proceeds from the highly marketable and liquid US Treasury securities that it originally purchased to pay back the borrowers, leaving FedEx with the Core USA fund securities, many of which are impaired and/or cannot be liquidated at the present time, if ever.

42. FedEx has rejected NTC's withdrawal option and insisted that NTC abide by its October 3, 2008 agreement to redeem in kind all FedEx Pension Trust assets from both index funds in the form and value of the original loaned and unloaned securities, <u>not</u> the Core USA securities.

## Causes of Action

### Count One – Breach of Fiduciary Duty

43. Plaintiffs repeat and reallege all allegations set forth in paragraphs 1 through 42 as if fully set forth herein.

44. NTC and NTI were at all relevant times ERISA fiduciaries with respect to the Plan pursuant to 29 U.S.C. § 1002(21). NTI was also an Investment Manager within the meaning of ERISA section 3(38), 29 U.S.C. § 1102(38) based on its role as the manager of the Collective Trust, including the Bond Index Fund and Russell 2000 Fund.

45. As fiduciaries, NTC and NTI owed duties of care and loyalty to the Plan with respect to the investments in the index funds. Pursuant to 29 U.S.C. § 1104(a), NTC

and NTI were obligated to discharge their responsibilities with the care, skill, prudence and diligence that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

46.     NTC and NTI breached their duties to the FedEx Pension Plan, in violation of 29 U.S.C § 1104(a) by, among other things, (a) recommending that the Plan invest in the index funds when they knew that FedEx did not want to engage in securities lending; (b) given FedEx's express investment desires with respect to securities lending, failing to explain the extent of securities lending in the funds; and (c) recommending that FedEx approve investment in funds with such extensive securities lending that the investment of the assets in the CoreUSA fund in fact altered the risk/return characteristics of the funds FedEx thought it was investing in.

47.     ERISA Section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D) provides that a fiduciary must act in accordance with the documents and instruments governing the Plan.

48.     The Trust Agreement between FedEx and NTC required NTC to enter into a written agreement with FedEx in order to lend assets or securities of the Plan, but NTC failed to enter into such an agreement with respect to the Bond Index Fund.

49.     The failure to return the value of the Plan's assets in accordance with the October agreements compromising the Plan's claims referenced above violated the terms of the Collective Trust, the descriptions of the funds and the October 2008 agreements between the parties compromising the Plan's claims.

50.     Pursuant to 29 U.S.C. § 1109, any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by ERISA is personally liable to make good to such plan any losses to

the plan resulting from such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and is subject to such other equitable or remedial relief as the court may deem appropriate.

51. Under 29 U.S.C. § 1132(a)(2), a civil action may be brought by a fiduciary for appropriate relief under 29 U.S.C. § 1109. In addition, under 29 U.S.C. § 1132(a)(3), a civil action may be brought by a fiduciary to enjoin any act or practice that violates any provision of ERISA or the terms of the plan, or to obtain other appropriate equitable relief to redress such violations or to enforce any provision of ERISA or the terms of the plan.

52. As a fiduciary with respect to the Plan, FedEx seeks monetary damages resulting from Defendant's breaches and seeks to restore all losses to the Plan resulting from Defendants' breaches. Alternatively, FedEx seeks an injunction to require Defendants to return the Plan's assets in accordance with their duties under ERISA and to redress their violations of the statute.

**Count Two — Breach of Contract by NTI and NTC under Federal Common Law**

53. Plaintiffs repeat and reallege all allegations set forth in paragraphs 1 through 52 as if fully set forth herein.

54. Congress intended that the federal courts fashion a body of federal common law to supplement ERISA's provisions. To the extent that FedEx is unable to obtain relief for NTC's violations of ERISA's fiduciary duty, FedEx alleges that the Plan is entitled to relief under the federal common law of contract.

55. Specifically, in October 2008, NTC and FedEx agreed to resolve and compromise the dispute between them as follows: NTC agreed to fully redeem in kind or

cash all of the Plan's assets (the loaned and unloaned securities or the cash equivalent) from the Bond Index Fund, while FedEx agreed to a return in eight installments beginning on October 15, 2008. The parties mutually understood that the value of the securities had decreased 1% as a result of the securities lending in the Funds. The offer and acceptance of the compromise of claims between the parties was memorialized in the written direction agreement drafted by NTC.

56. On or about December 29, 2006, FedEx and NTC agreed that, upon notification from FedEx that it no longer desired Plan assets to be involved in securities lending, NTI would give back all Plan assets in the Russell Index Fund at the value established by the fund's documents provided by NTC. Consistent with the December 29, 2006 Agreement, on or about October 3, 2008, NTC and FedEx agreed to compromise their claims by NTC redeeming the Plan's assets (loaned and unloaned securities or their cash value) from the Russell Index Fund and FedEx agreeing to four approximately equal installments over a four day period beginning on October 27, 2008.

57. NTI subsequently breached agreements between the parties by refusing to redeem the Plan's assets from both index funds in the form of the loaned and unloaned securities or their cash equivalent.

58. FedEx seeks damages, in an amount to be proven at trial, to compensate it for losses resulting from Defendants' breaches.

## Count Three – Breach of Settlement Agreement

59. Plaintiffs repeat and reallege all allegations contained in paragraphs 1 through 58 is if fully set forth herein.

60. This claim is to enforce a valid settlement agreement between the parties.

61.     The directional letter and defendants' acknowledgment, which are attached as Exhibits A and B hereto, constitute a valid and enforceable settlement agreement to resolve an outstanding dispute between the parties.

62.     Prior to entry of the agreement, FedEx indicated its disapproval of defendants' action and belief that its rights were violated. To avoid a lawsuit or claim, defendants proposed the agreement, which FedEx accepted.

63.     There was a binding agreement supported by valid consideration.

64.     Without justification, defendants reneged on the agreement and refused to perform.

65.     Plaintiffs demand that this agreement be enforced to its terms and all assets restored to the pension plan in the form and manner in which Defendants agreed.

## Prayer for Relief

The FedEx Plaintiffs respectfully request that this Court enter a judgment, in favor of the FedEx Plaintiffs, providing as follows:

A.      Monetary damages, in an amount to be determined by the Court, resulting from Defendants' breach of fiduciary duty and breach of the federal common law of contract.

B.      NTC and NTI shall pay and restore to the Plan in an amount to be determined by the Court that will restore all losses that resulted from NTC and NTI's violations of ERISA, together with pre-judgment interest running from the date such losses were incurred.

C.      NTC and NTI shall pay and disgorge to the Plan an amount to be determined by the Court equal to all fees and other amounts they received for providing

services in connection with the index funds, together with pre-judgment interest running from the dates such amounts were received.

      D.      An order directing NTC to obey and enforce the settlement agreement.

      E.      The FedEx Plaintiffs shall be awarded their attorney's fees and costs, pursuant to 29 U.S.C. § 1132(g).

      F.      The FedEx Plaintiffs, in their capacities as fiduciaries and on behalf of the FedEx Pension Plan, shall be awarded such other and further relief as the Court deems just and proper.

      G.      Plaintiffs demand a trial by jury as to all issues so triable.

Dated this 1st day of December, 2008.

Respectfully Submitted,

s/ Connie Lewis Lensing
Connie Lewis Lensing (TN Bar No. 14025)
R. Jeffery Kelsey (TN Bar No. 15522)
Michael W. Higginbotham (TN Bar No. 016141)
Justin M. Ross (TN Bar No. 019571)
Federal Express Corporation Legal Department
3620 Hacks Cross Road, Building B, 3rd Floor
Memphis, TN 38125
901-434-8600

Christopher J. Rillo (To be admitted)
Edward A. Scallet (To be admitted)
Groom Law Group, Chartered
1701 Pennsylvania Ave., N.W.
Washington, D.C. 20006
202-857-0620

**Attorneys for Plaintiffs**