**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| FEDEX CORPORATION, | ) | |
| FEDEX CORPORATION | ) | |
| EMPLOYEES' PENSION PLAN, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:08-cv-2827-dkv |
| | ) | |
| THE NORTHERN TRUST COMPANY, | ) | |
| and NORTHERN TRUST | ) | |
| INVESTMENTS, N.A., | ) | |
| | ) | |
|     Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**
**COUNTS TWO AND THREE OF THE COMPLAINT**

Defendants The Northern Trust Company ("NTC") and Northern Trust Investments, N.A. ("NTI") (collectively, "Defendants"), respectfully submit this Memorandum in Support of their Motion to Dismiss Counts Two and Three of the Complaint filed by Plaintiffs FedEx Corporation ("FedEx") and FedEx Corporation Employees' Pension Plan ("Plan") (collectively, "Plaintiffs").[1]

In Counts Two and Three of the Complaint, Plaintiffs allege that the Defendants breached "compromise" agreements to allow the Plan to withdraw "in cash or in kind" all of the Plan's assets in two investment funds managed by NTI. Cmplt. ¶¶ 37-38. As shown below, however,

_____

[1]    Count One of the Complaint alleges breach of fiduciary duty by the Defendants. While the Defendants dispute that claim as well, its disposition requires correction of factual errors in the Complaint and reference to additional factual information that Plaintiffs have omitted from the Complaint; the claim is therefore not ripe for adjudication on a motion to dismiss.

Counts Two and Three fail to state a claim against either Defendant because the Plaintiffs do not allege that the "compromise" agreements upon which those counts rest were supported by consideration and the Complaint itself reflects that the alleged "compromise" agreements were *not* supported by consideration because FedEx had no right to "immediate withdrawal" of the Plan's assets "in cash or in kind" in the first place.  The contract claims against NTC also fail to state a claim because the allegations of the Complaint demonstrate that NTC was not a party to the alleged agreements.  And while the Complaint includes two claims for breach of the alleged "compromise" agreements, the claim set forth in Count Three should be dismissed because it is either duplicative of the contract claim in Count Two or preempted by ERISA.

### BACKGROUND

FedEx is the Administrator of the Plan.  Cmplt. ¶ 1.[2]  In that capacity, FedEx invested Plan assets in an investment fund managed by NTI called the NTGI-QM Collective Daily Long-Term Government Bond Index Fund – Lending ("Long-Term Bond Index Lending Fund").  Cmplt. ¶ 21 and Ex. B.[3]  As of October 1, 2008, the book value of the Plan's investments in the Long-Term Bond Index Lending Fund exceeded $700 million.  Cmplt. Ex. B.

In late 2006, FedEx authorized investments in another fund managed by NTI, the NTGI-QM Collective Daily Russell 2000 Index Fund – Lending ("Russell 2000 Index Lending Fund) (collectively with the Long-Term Bond Index Lending Fund, the "Funds").  Cmplt. ¶ 24 and Ex. A.  The Complaint does not allege the value of the investments FedEx made in the Russell 2000 Index Lending Fund.

---

[2]    Plaintiffs' well-pleaded allegations are accepted as true only for purposes of this Motion to Dismiss.  Only allegations relevant to the claims set forth in Counts Two and Three are included herein.

[3]    Originally, the fund was named the "NTQA Long-Term Government Bond Index Fund."  Cmplt. ¶ 21.

After learning of a deficiency in the collateral pool used by the Funds, FedEx sought to withdraw all of the Plan's investments in the Funds.  Cmplt. ¶ 31, 36.  The Complaint alleges that the Defendants originally refused FedEx's request to "immediately redeem" the full value of the Plan's investments.  Cmplt. ¶¶ 31.  In the wake of this alleged refusal to return Plan assets, one might expect the Complaint to describe contemporaneous allegations by FedEx that the Defendants were violating terms of agreements governing these investments, that FedEx demanded that the Defendants adhere to those terms, and that FedEx threatened suit to enforce its understanding of those terms, but the Complaint says nothing of the sort.

Indeed, the Complaint does not identify any term of any agreement that was violated by the Defendants' alleged refusal to redeem immediately all of the Plan assets "in cash or in kind." Nor does it allege that the alleged actions of the Defendants were *not* authorized by the agreements that governed the Plan's investments in the Funds.  The Complaint includes no allegations at all regarding the terms of the Plan's investment in the Long-Term Bond Index Lending Fund, much less an allegation that the terms of that investment required either defendant to redeem the investments immediately at full value.

Far from it.  Although the Complaint does include some allegations about some of the terms that govern the Plan's investment in the Russell 2000 Index Lending Fund, those allegations make plain that the Plan is *not* entitled to the immediate withdrawal of invested assets.  Exhibit A to the Complaint is a letter directing NTC to invest Plan assets in the Russell 2000 Index Lending Fund, ¶ 25, and sets forth at least some terms relevant to the Plan's investment in that fund.  That direction letter states explicitly (and the Complaint concedes) that the assets may be redeemed "not later than thirty (30) days following receipt" of notice of withdrawal from FedEx.  Cmplt. ¶ 25 and Ex. A.

Given the fact that FedEx had no right to the immediate withdrawal of all of its invested assets in cash or in index securities, it is perhaps not surprising that the Complaint also lacks any allegation that FedEx threatened any litigation against the Defendants, or that the parties engaged in settlement negotiations, when FedEx was advised that a withdrawal would have to include its pro rata share of assets invested in the collateral fund.  Cmplt. ¶¶ 31, 41.  Instead, and without providing any supporting allegations at all, the Complaint alleges only that "NTI offered," and "FedEx accepted," a "compromise" relating to FedEx's "demand for a complete and immediate withdrawal" from the Funds.  Cmplt. ¶¶ 37-38.  The Complaint says nothing about the terms of the alleged compromise agreements, beyond the allegation that "NTC agreed to fully redeem in kind or cash all of the Plan's assets," ¶ 55, and that FedEx agreed to accept return of the assets in installments during the course of the next several weeks.  Cmplt. ¶ 55-56.[4]  Despite its characterization of this alleged compromise as a "settlement agreement," ¶ 60, the Complaint does not allege that the parties agreed to any of the provisions common to settlement agreements, such as a release from potential claims or a covenant not to sue, jurisdictional provisions, terms acknowledging that the settlement does not constitute any admission of liability, confidentiality provisions, common warranties and indemnities, provisions governing the confidentiality of the

---

[4]     The Complaint *does* allege that "the offer and acceptance of the compromise of claims between the parties relating to the investment in the Long-Term Bond Index Lending Fund was memorialized in the written direction agreement" that is attached to the Complaint as Exhibit B.  Cmplt. ¶ 55.  Plaintiffs do not allege that the alleged "compromise" agreement as to the Russell 2000 Index Lending Fund was memorialized in any writing and no such writing is included as an exhibit to the Complaint.  Moreover, the Complaint provides no explanation for why the parties allegedly memorialized one of the agreements but not the other.  In any event, it is plain that the purported memorialization of the "compromise" concerning the Long-Term Bond Index Lending Fund does not manifest agreement by NTI or NTC (much less both) to do anything; it merely purports to direct NTC to process the trades described.  The Complaint concedes as much, because it alleges that it is actually in the e-mail attached to the Complaint as Exhibit C that NTC allegedly "acknowledged receipt of the letter and agreed to begin the withdrawal process as agreed."  Cmplt. ¶ 39.  But even Exhibit C fails to manifest an agreement to grant the withdrawal request; it states only that the direction letter will be submitted for processing.  The email provides no assurance that any of the requested trades would be approved—only that FedEx would be advised as to their status.

settlement process and agreement, or provisions providing for remedies and enforcement of the

agreement in the event of breach.

In short, Counts Two and Three of the Complaint describe purported contracts in which

the Defendants agreed to give the Plaintiffs withdrawal rights, to which Plaintiffs do not even

allege they were entitled, in exchange for nothing in return.  As set forth below, those purported

contracts are not legally binding agreements and the Complaint therefore fails, on its face, to

state any claim for breach of contract.

## ARGUMENT

**I.      Counts Two and Three Fail To State A Claim For Breach of Contract Because Plaintiffs Do Not Allege That The "Compromise" Agreements Were Supported By Consideration.**

It is black-letter law that to be enforceable, an alleged contract must be supported by

consideration.[5]  *Sako v. Ohio Dep't of Admin. Servs.*, 278 F. App'x 514, 517 (6th Cir. 2008)

(applying "normal contract principles" to claims governed by federal law and describing "lack of

consideration" as a "typical exception[]" to the enforceability of alleged contracts); *Bratton v.*

*Bratton*, 136 S.W.3d 595, 600 (Tenn. 2004) ("[a]ll contracts must be supported by adequate

consideration"); *Vassilkovska v. Woodfield Nissan, Inc.*, 830 N.E.2d 619, 624 (Ill. App. Ct. 2005)

("A legally enforceable contract is an exchange, and the elements of a contract include offer,

acceptance, and consideration.  It is a basic tenet of contract law that in order for a promise to be

enforceable against the promisor, the promisee must have given some consideration for the

---

[5]      Plaintiffs acknowledge in Count Two that their breach of contract claim arises under ERISA and is governed by the federal common law of contract.  Cmplt. ¶ 54.  *See Chiera v. John Hancock Mut. Life Ins. Co.*, 3 F. App'x 384, 391 (6th Cir. 2001) (applying "federal common law rules of contract interpretation, guided by both state law and general contract principles," to interpret an ERISA-governed insurance policy).  Count Three is similarly preempted by ERISA and is also governed by federal common law (see Argument section III, below).  Consistent with *Chiera*'s teaching, this memorandum cites both federal common law contract cases and state cases to the extent that they are consistent with general common law contract principles.

promise.") (citations omitted)**.**  Plaintiffs here assert claims for breach of an agreement to "compromise" certain claims, but it is plain from the face of the Complaint that there was no consideration for the alleged agreement.

The "compromise" alleged by Plaintiffs resulted from their demand for "a complete and immediate withdrawal," in cash or index securities, from the Funds.  Plaintiffs allege that "[i]n early 2008, NTI offered, as a *compromise to FedEx's demand for a complete and immediate withdrawal*, to fully redeem in cash or in kind all of the Plan's assets . . . from the Bond Index Fund in eight approximately equal installments over an eight day period beginning on October 15, 2008.  Cmplt. ¶ 37 (emphasis added).  Similarly, Plaintiffs allege that "NTI and FedEx also reached a *compromise* that NTI would fully redeem in cash or in kind all of the Plan's assets . . . from the Russell Index Fund in four approximately equal installments over a four day period beginning on October 27, 2008."  *Id.* ¶ 38 (emphasis added).  These alleged "compromise" agreements form the basis for both Count Two ("Breach of Contract by NTI and NTC under Federal Common Law") and Count Three ("Breach of Settlement Agreement").

Nowhere, however, do the Plaintiffs allege facts that show that there was any consideration for the alleged compromise.  Plaintiffs include a conclusory allegation that the purported "settlement agreement" was "supported by valid consideration," ¶ 63, but that is a conclusion of law, not an allegation of fact, and it is plainly insufficient to plead the existence of a valid contract.  Rule 8 "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do"; at the pleading stage, federal plaintiffs must supply factual allegations "plausibly suggesting (not merely consistent with)" the existence of those elements.  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1959 (2007).  *See also*, *e.g.*, *Southeast Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 671 (6th Cir. 2006) (a federal

6

complaint "requires more than the bare assertion of legal conclusions. Rather, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory") (citation omitted).

The allegations of the Complaint do not come close to "plausibly suggesting" that there was "valid consideration" for the alleged agreements.  The Complaint does not identify any "consideration" and the only concession that the Plaintiffs purportedly made in the alleged compromise was an agreement to take their withdrawal over a period of days rather than immediately in a single withdrawal.  Cmplt. ¶ 55.  The alleged agreement to "compromise" Plaintiffs' "demand for a complete and immediate withdrawal," however, would only be supported by consideration *if* Plaintiffs had a legal basis to demand "complete and immediate withdrawal" in the first place.  To the extent that a party purports to give consideration for a promise by forgoing a right, there must be a legitimate basis for assertion of such a right.  *See Bratton*, 136 S.W.3d at 602 ("Consideration exists when a party does something that he or she is under no legal obligation to do or refrains from doing something which he or she has a legal right to do."); *Cochran v. Robinhood Lane Baptist Church*, No. W2004-01866-COA-R3-CV, 2005 Tenn. App. LEXIS 814, at *12 (Tenn. Ct. App. Dec. 27, 2005) ("[S]ince Appellant had no rights to the benefits conferred to her, Appellant's subsequent relinquishment of those benefits cannot constitute consideration."); *cf. Johnson v. Maki & Assocs.*, 682 N.E.2d 1196, 1199 (Ill. Ct. App. 1997) ("[W]here a party does what it is already legally obligated to do, there is no consideration because there has been no detriment.").

But Plaintiffs do not allege anywhere in the Complaint—not in the section captioned "NTI's Agreement to Fully Redeem the FedEx Pension Trust Assets From Both Index Funds" (Cmplt. ¶¶ 36-42), not in Counts Two or Three, and not anywhere else—that they had a right to

"complete and immediate withdrawal."  They omit any such allegation for good reason:  no such right existed and the Complaint demonstrates as much.

Plaintiffs attach to the Complaint a December 29, 2006 "direction letter" that they allege sets out the agreement between the FedEx Retirement Plan Investment Board and The Northern Trust Company with respect to investments in the Russell 2000 Index Lending Fund.  *See* Cmplt. ¶¶ 24-25 and Ex. A.  Far from establishing that there was a legal basis for Plaintiffs to demand "a complete and immediate withdrawal" from the Russell 2000 Index Lending Fund, the "direction letter" on its face states only – as ¶ 25 of the Complaint concedes – that the assets may be redeemed "not later than thirty (30) days" following receipt from FedEx of notice of withdrawal. *See id.* Ex. A at 1 ("If the Committee subsequently notifies you [The Northern Trust Company] that they no longer desire Trust assets to be included in the securities lending program, you will cause such assets to be redeemed without penalty from the Fund as soon as possible but *not later than thirty (30) days following receipt of such notice*." (emphasis added)).  Because Plaintiffs' alleged agreement only required The Northern Trust Company to redeem the Plan's assets in the Russell Index Fund within "thirty (30) days," the alleged "compromise" agreement by which NTI allegedly agreed to fully redeem the Plan's assets in that fund "over a four day period beginning on October 27, 2008" (Cmplt. ¶ 38) is not supported by any consideration.  Plaintiffs gave nothing up as part of the alleged agreement since they do not allege that they were entitled to redeem the assets any sooner and, on the face of their Complaint, their allegations show that they were *not* entitled to redeem the assets any sooner.[6]

---

[6]     Plaintiffs cannot bootstrap their breach of contract claims into claims for breach of a settlement agreement by claiming that there was consideration for a settlement agreement because they agreed not to pursue a claim for breach of contract against the Defendants.  That circular argument gets them nowhere; if there was no consideration for the alleged compromise regarding withdrawal of the Plans' assets, agreeing to forego that invalid claim cannot constitute valid consideration either. *See, e.g.*, *Travelers Ins. Co. v. Wing*, 584 S.W.2d 789, 791 (Tenn. 1971) (reversing trial court's enforcement of settlement

The purported "compromise" as to the investment in the Long-Term Bond Index Lending Fund is likewise unsupported by any allegation of consideration.  As to that fund, Plaintiffs do not even identify a written agreement governing the terms of the investment; thus, they do not (and cannot) allege that they were entitled to redeem the assets in the Long-Term Bond Index Lending Fund any sooner than the "eight day period beginning on October 15, 2008."  Cmplt. ¶ 37.  The Complaint provides no basis for the Court to infer that the Plaintiffs were entitled to superior withdrawal rights, particularly given the contrary terms of the "direction letter" (Cmplt. Ex. A) allegedly governing redemption of the assets in the Russell 2000 Index Lending Fund and allowing "thirty (30) days" for such redemption.  Thus, Plaintiffs' claim for breach of the alleged "compromise" agreement concerning the Long-Term Bond Index Lending Fund likewise fails for want of consideration.

## II.      Counts Two and Three Should Be Dismissed As To Defendant NTC Because The Complaint Alleges That It Was NTI That Allegedly Entered Into The "Compromise" Agreements and NTI That Allegedly Breached Those Agreements.

In any event, at the very least, defendant NTC should be dismissed from Counts Two and Three if those Counts are not dismissed altogether for lack of consideration.  Counts Two and Three fail as to NTC for the *additional* reason that Plaintiffs allege that "NTI is the trustee and manages the collective funds at issue in this case."  Cmplt. ¶ 8.  Plaintiffs concede that NTI – not NTC – has "sole investment discretion as to the assets invested in the Collective Trust," including the assets invested in the Funds.  Cmplt. ¶¶ 20, 26.  Moreover, Plaintiffs allege – in the section of the Complaint captioned "NTI's Agreement to Fully Redeem the FedEx Pension Trust

---

agreement where appellee had no legal right to the benefit originally claimed; "absent a legally enforceable right [to the benefits claimed], there would be no consideration to support the settlement agreement"); *F.H. Prince & Co. v. Towers Fin. Corp.*, 656 N.E.2d 142, 149 (Ill App. 1995) (forbearance from asserting a claim plaintiff knows, or should know, is unfounded does not constitute valid consideration for a settlement agreement).

Assets From Both Index Funds" – that it was NTI, and not NTC, that entered into the alleged "compromise" agreements with respect to redemption of assets in those funds. *See* Cmplt. ¶ 37 (alleging that "[i]n early October 2008, NTI offered, as a compromise to FedEx's demand for a complete and immediate withdrawal, to fully redeem in cash or in kind all of the Plan's assets . . . from Bond Index Fund in eight approximately equal installments over an eight day period beginning on October 15, 2008" and that "FedEx accepted NTI's offer"); *id.* ¶ 38 ("NTI and FedEx also reached a compromise that NTI would fully redeem in cash or in kind all of the Plan's assets . . . from the Russell Index Fund . . . .") Moreover, Plaintiffs allege that it was "NTI" that "subsequently breached" the agreements. *Id.* ¶ 57.

By contrast, the Complaint contains no fact allegations that NTC extended any compromise offer to the Plaintiffs.[7] Nor does the Complaint provide any basis to infer that NTC would have any authority to bind NTI in the exercise of its duties as trustee of the Collective Funds even if it had extended such an offer. NTC was the securities lending agent for NTI and the trustee of the FedEx Pension Trust, Cmplt. ¶ 7, but neither position would allow NTC to bind NTI to distribute assets in any particular manner or on any particular schedule—and the Complaint does not allege that either did so.

In short, the Complaint alleges that it was NTI – not NTC – that was trustee of the Funds, that entered into the alleged "compromise" agreements, and that "breached" the alleged agreements. Counts Two and Three should be dismissed as to both NTI and NTC for failure to

---

[7]    To be sure, in Count Two itself, plaintiffs allege that it was NTC, and not NTI, that entered into these "compromise" agreements with FedEx. *See* Cmplt. ¶¶ 55-56. Presumably, this allegation against NTC is a typographical error; otherwise, plaintiffs' allegations in ¶¶ 37-38 concerning the agreements on which their claims rest, and their allegation in ¶ 57 that the alleged agreements were breached by NTI, would be completely contradicted by the allegations of ¶¶ 55-56. If it is not a typographical error, then Counts Two and Three should be dismissed on the basis of the "contradictory assertions contained in the complaint." *Southeast Tex. Inns,* 462 F.3d at 678-79 (affirming dismissal based on contradictory allegations in complaint).

allege consideration.  But even if they are not dismissed in their entirety on that ground, there is simply no basis alleged for asserting breach of contract claims against NTC in connection with the alleged agreements with NTI.

### III.      COUNT THREE MUST BE DISMISSED AS PREEMPTED OR DUPLICATIVE.

Although Plaintiffs concede that, as a breach of contract claim relating to an ERISA plan, Count Two is governed by federal common law (Cmplt. ¶ 54), their Complaint also includes a claim as Count Three for "Breach of Settlement Agreement."  In Count Three, Plaintiffs do not expressly make the same acknowledgement regarding the application of federal common law (although Count Three does incorporate ¶ 54 by reference), suggesting that the Plaintiffs may purport to assert Count Three as a state law claim.  If so, Count Three is preempted by ERISA.  And if the Plaintiffs intend to assert in Count Three a claim for "breach of settlement agreement" under federal common law, then it is duplicative of Count Two.  In either event, Count Three must be dismissed.

ERISA preempts all state common law claims that "relate to an employee benefit plan." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987).  This includes state law breach of contract claims against fiduciaries generally, *see, e.g., Rud v. Liberty Life Assur. Co. of Boston*, 438 F.3d 772, 777-78 (7th Cir. 2006); *Dudley Supermarket, Inc. v. Transamerica Life Ins. and Annuity Co.*, 302 F.3d 1, 4 (1st Cir. 2002), and state law claims asserting breach of a settlement agreement relating to disputed ERISA claims, *see, e.g., Zuniga v. Blue Cross & Blue Shield,* 52 F.3d 1395, 1401 (6th Cir. 1995); *Bd. of Trs. of Hotel & Rest. Employees Local 25 v. Madison Hotel*, *Inc.*, 97 F.3d 1479, 1486-89 (D.C. Cir. 1996); *Bridge v. McHenry Truck Lines, Inc.*, 1998 WL 427611, *3 (N.D. Ill. 1998) (a claim that "arises out of a contract 'relating to' the settlement

11

of an ERISA claim is . . .  preempted by ERISA").  Accordingly, Count Three cannot survive as a state law claim.

Count Three fares no better as a federal common law claim under ERISA because it is based on precisely the same fact allegations as is Count Two.  That one of the claims is styled "breach of contract" and the other "breach of settlement agreement" is immaterial; a settlement agreement is nothing more than a specific type of contract and ordinary contract principles apply to claims that a settlement agreement has been breached.  *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006); *City of Chicago Heights v. Crotty*, 679 N.E.2d 412, 413 (Ill. App. Ct. 1997). Accordingly, even if Counts Two and Three are not both dismissed for want of consideration, Count Three should be dismissed as duplicative of Count Two.  *Collins v. Yellow Freight Sys., Inc.*, 93 Fed. Appx. 854, 863 (6th Cir. 2004) (affirming dismissal of duplicative claims); *Williams v. Luttrell*, 2007 WL 3236662, *8 (W.D. Tenn. 2007) (dismissing duplicative constitutional claims based on same fact allegations).

## CONCLUSION

For the foregoing reasons, Counts Two and Three of the Complaint should be dismissed with prejudice.

Respectfully submitted,

s/Glen G. Reid, Jr.

Wyatt, Tarrant & Combs, LLP
1715 Aaron Brenner Dr., Suite 800
Memphis, TN  38120
901-537-1000

Attorneys for Defendants

12

Michele Odorizzi, Esq.
Caryn L. Jacobs, Esq.
John J. Tharp, Jr., Esq.
Mayer Brown, LLP
71 S. Wacker Dr.
Chicago, IL 60606
312-701-7146

*PRO HAC VICE* **TO BE FILED**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copy of the foregoing has been served via the Court's electronic filing system this 3rd day of February, 2009.

s/Glen G. Reid, Jr.

616409.1

13