**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

_____

| | | |
|---|---|---|
| **FEDEX CORPORATION,** | ) | |
| **FEDEX CORPORATION** | ) | |
| **EMPLOYEES' PENSION PLAN,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2:08-CV-2827-dkv** |
| | ) | |
| **THE NORTHERN TRUST COMPANY,** | ) | **Jury Trial Demanded** |
| **and NORTHERN TRUST** | ) | |
| **INVESTMENTS, N.A.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS**
**COUNTS TWO AND THREE OF THE COMPLAINT**
_____

Plaintiffs FedEx Corporation and FedEx Corporation Employees' Pension Plan (collectively referred to as "FedEx") submit this Opposition to the Motion to Dismiss Counts Two and Three of the Complaint filed by Defendants Northern Trust Company ("NTC") and Northern Trust Investments, N.A. ("NTI") (collectively referred to as the "Defendants").

## <u>INTRODUCTION</u>

This case is about Defendants' improper handling and investing of FedEx's Pension Plan Assets (the "Plan Assets") as a result of unauthorized, excessive and imprudent securities lending and Defendants' subsequent failure and refusal to allow FedEx to fully withdraw the Plan Assets from the funds in which the assets are invested, despite Defendants' prior agreement to do so.  As a result of Defendants' actions, FedEx has lost the use of approximately $1 billion of Plan Assets and has suffered a significant

loss in the value of those assets.  FedEx filed the current lawsuit against Defendants, asserting a claim for breach of fiduciary duty relating to Defendants' imprudent securities lending and claims for breach of contract and breach of settlement agreement relating to Defendants' failure to abide by their agreement to allow FedEx to fully withdrawal the Plan Assets from Defendants' funds over a period of days to be complete on November 1, 2008.

In their Motion to Dismiss, Defendants seek dismissal of the breach of contract (Count Two) and breach of settlement agreement (Count Three) claims on the ground that the Complaint does not sufficiently allege that the settlement agreement was supported by consideration.  Defendants also seek dismissal of these claims as to NTC on the ground that the Complaint does not allege that NTC was a party to the settlement agreement.   Finally, Defendants request dismissal of the breach of settlement agreement claim on the basis that it is either duplicative of the breach of contract claim or preempted by ERISA.

Defendants' Motion to Dismiss, however, is not well founded and, therefore, should be denied.  First, the Complaint sufficiently alleges a common law claim under Tennessee law that the parties entered into a settlement agreement to resolve a bona fide dispute regarding Defendants' improper securities lending and FedEx's demand for a full redemption in cash or in kind from both funds, and to avoid a lawsuit by FedEx.  It is well settled that the avoidance of litigation and the forbearance of a right to sue is sufficient consideration to support a settlement agreement.  Second, Defendants' Motion to Dismiss the breach of contract and breach of settlement agreement claims as to NTC should be denied because the Complaint sufficiently alleges that both NTC and NTI were

parties to the agreement.  Third, Defendants' Motion to Dismiss the breach of settlement agreement claim on the basis that it is preempted by ERISA should be denied because the breach of settlement agreement claim is a stand alone Tennessee state law claim that is too tenuous, remote or peripheral to an ERISA plan to warrant ERISA preemption. Finally, the breach of settlement agreement claim is not duplicative of the federal common law breach of contract claim because the former is brought under Tennessee state law and the latter is brought pursuant to federal common law.  Alternatively, if this Court determines that FedEx's Complaint is deficient as to the pleading requirements for Counts Two and Three, FedEx requests leave to amend the Complaint to rectify any pleading deficiencies.

<u>**FACTUAL ALLEGATIONS OF THE COMPLAINT**</u>

A portion of FedEx's Plan Assets were invested in two of Defendants' funds – the Bond Index Fund and the Russell Index Fund.  (Comp., ¶¶ 21, 24).  In mid-September 2008, FedEx directed NTC to transfer Plan Assets from the Bond Index Fund to a new investment manager's account.  (Comp., ¶ 29).  NTC refused to honor FedEx's transfer request because, according to NTC, there was not sufficient liquidity in the Bond Index Fund as a result of the Bond Index Fund's securities lending.  (Comp., ¶¶ 30-31).  NTC advised FedEx of similar problems with the Russell Index Fund.  (Comp., ¶ 32).  After learning of the liquidity problems in both funds caused by securities lending, FedEx demanded from Defendants a complete withdrawal of the Plan Assets from both funds. (Comp., ¶ 36).   FedEx advised Defendants that it disapproved of their imprudent securities lending and disapproved of their refusal to allow a complete withdrawal from

both funds and further advised Defendants that it believed its rights were being violated. (Comp., ¶ 62).

In early October 2008, to avoid a lawsuit or claim by FedEx, Defendants proposed an agreement to resolve the dispute related to the securities lending of the Plan Assets and FedEx's demand for a complete withdrawal of the Plan Assets from both funds. (Comp., ¶¶ 37, 62). Defendants and FedEx agreed that Defendants would fully redeem in kind all of the Plan Assets from the Bond Index Fund in eight equal daily installments beginning on October 15, 2008 and to be completed on October 24, 2008, and from the Russell Index Fund in four equal daily installments beginning on October 27, 2008 and to be completed on November 1, 2008. (Comp., ¶¶ 37-38, Exhibits B and C). The agreement was memorialized in an October 3, 2008 letter drafted by Defendants and signed by FedEx, and was confirmed by several contemporaneous emails between the parties. (Comp., ¶ 39, Exs. B and C).[1] Defendants began performance under the agreement on October 3, 2008, when they began processing the redemptions. (Comp., Ex. C).

On October 14, 2008, Defendants advised FedEx that they would not honor the agreement. (Comp., ¶ 40). Instead, Defendants required that FedEx accept impaired and illiquid collateral securities as its withdrawal proceeds, as opposed to the in kind securities from the Bond Index and Russell Index funds that Defendants previously agreed to deliver. (Comp., ¶¶ 40-41). FedEx has rejected Defendants' withdrawal option and has insisted that Defendants abide by their compromise agreement to redeem in kind

---

[1] The letter was dated October 3, 2008, but was actually received by Defendants on October 2, 2008, as evidenced by Exhibit C to the Complaint.

all Plan Assets from both index funds in the form of index fund securities, not the impaired and illiquid collateral securities.  (Comp., ¶ 42).

## ARGUMENT

On a motion to dismiss, the Court must construe the Complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 501 F.3d 493, 502 (6th Cir. 2007) (quoting Twombly v. Bell Atlantic, 550 U.S. 544, 570 (2007)).  The factual allegations supporting the material elements of the claims can either be direct or inferential. Wittstock v. Mark a Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003).

**I.     The Complaint Sufficiently Alleges That the Settlement Agreement Was Supported by Consideration.**

It is well settled that consideration to support a contract can take many different forms.  Generally, consideration for a contract may be either a benefit to the promisor or a detriment to or obligation upon the promisee.  See, e.g., Trailer Conditioners, Inc. v. Huddleston, 897 S.W.2d 728, 731 (Tenn. Ct. App. 1995).  The abandonment of any right, or a promise to forbear from exercising it, is sufficient consideration for a promise.   The right abandoned may be legal or equitable, certain or doubtful, and may exist against the promisor or a third party.  See Danheiser v. Germania Savings Bank & Trust Co., 137 Tenn. 650, 657-58 (Tenn. 1917).

Forbearance of the right to sue, refraining from bringing suit, or the avoidance of litigation is universally recognized as sufficient consideration to support a settlement agreement.  See, e.g., id. at 660; Johnson and Sherron v. The Central National Insurance Company of Omaha, 356 S.W.2d 277, 281-82 (Tenn. 1962).  Forbearance to sue may be

implied or inferred from the conduct of the parties and the nature of the transaction and courts may look behind the recitals of written instruments to determine the actual consideration.  See Johnson, 356 S.W.2d at 281-282; Palmer v. Dehn, 29 Tenn. App. 597, 600 (Tenn. Ct. App. 1946) (car owner's promise to pay mechanic for cutting off mechanic's fingers supported by consideration because it was inferred that mechanic agreed to refrain from suing car owner in return for promise); Service Stamp Co. v. Ketchen, 10 Tenn. App. 59, 62-63 (Tenn. Ct. App. 1929) (employer's promise to pay printer for damage caused by employer's employee supported by consideration because it could be inferred that printer refrained from suing employer in exchange for the promise to pay); Bryant v. Wright, 1999 Tenn. App. LEXIS 6 at *10 (Tenn. Ct. App., Jan. 7, 1999) (Bryant's agreement to co-maker of note to re-pay co-maker for co-maker's paying note off was supported by consideration because it was implied that co-maker gave up her right to sue Bryant for contribution on note in return for his promise to pay her back).[2]

Moreover, forbearance of the right to sue can constitute sufficient consideration, even if the claim is a doubtful one:

> Regardless of whether suit is pending in regard to the claim, the settlement thereof is sufficient consideration for a promise because of the detriment to the party consenting to the compromise arising from the alteration of his position. . . . It is not a defense that the claim could not have been maintained if suit or action had been brought upon it. . . . **[A]ll that is necessary is that there should be a claim concerning which the parties may bona fide and upon reasonable grounds disagree.**

Ketchen, 10 Tenn. App. at 61 (emphasis added); see also Thurmond v. Whittaker, 1 Tenn. App. 111, 117 (Tenn. Ct. App. 1925) ("The compromise of a claim which is

---

[2] Copies of all unpublished cases cited in this Response are attached hereto at **Exhibit A**, in order of their appearance in the Response.

asserted in good faith and under color of right is conclusive and binding on the parties thereto when the claim is doubtful, and the compromise made in settlement of a dispute, even though it may be ultimately found that the claimant could not have prevailed.")

In the case at hand, the Complaint alleges that in mid-September 2008 a dispute arose between FedEx and Defendants regarding Defendants' securities lending and Defendants' refusal to allow FedEx to fully withdraw the Plan Assets from Defendants' funds.  (Comp., ¶¶ 29-31).  FedEx alleges that in mid-September 2008 it directed Defendants to transfer the Plan Assets to another investment manager account, but Defendants refused.  (Comp., ¶¶ 30-31).  FedEx alleges that it then demanded a complete and immediate withdrawal of the Plan Assets in cash or in kind from both funds, but Defendants once again refused.  (Comp., ¶ 36).  FedEx then alleges that, in order to avoid a lawsuit or claim by FedEx, Defendants promised to fully redeem—in the form of "in kind" securities—all of the Plan Assets from both funds in daily installments beginning on October 15, 2008 and to be completed on November 1, 2008.  FedEx alleges that it accepted Defendants' promise and the parties' agreement was memorialized in a letter dated October 3, 2008, and was confirmed by subsequent emails by Defendants.  (Comp., ¶¶37-38, 62, Exs. B and C).

The Complaint in this case sufficiently alleges that FedEx's forbearance of its right to sue constituted consideration for the compromise agreement.  In fact, the Complaint expressly alleges that the compromise agreement was reached "in order to avoid a lawsuit or claim" by FedEx against Defendants.  The Complaint further alleges that FedEx refrained from immediately bringing a lawsuit or claim against Defendants in return for their promise to fully redeem FedEx's Plan Assets from both funds in

installment payments over a period of fifteen days beginning on October 15, 2008 and ending on November 1, 2008.  Additionally, FedEx's forbearance of its right to sue can easily be implied or inferred from the allegations that a dispute existed, FedEx disapproved of Defendants' actions and FedEx believed that its rights were being violated.  (Comp., ¶ 62).  The consideration for the agreement, therefore, was FedEx's forbearance of its right to immediately sue Defendants for their improper securities lending and their refusal in mid-September 2008 to fully redeem the Plan Assets from both funds.[3]

Defendants argue that the only plausible suggestion of consideration in the Complaint was FedEx's agreement to take the withdrawal over a period of days rather than immediately in a single withdrawal.  (Def's Mem. at p. 7).  Defendants further argue that this was not sufficient consideration because FedEx actually gave up nothing because it had no right to a complete and immediate withdrawal based on the December 29, 2006 Russell direction letter.  (Def's Mem. at p. 8).  Defendants' arguments on this issue, however, are flawed in several respects.

First, as explained above, the Complaint sufficiently alleges that FedEx's forbearance of its right to immediately sue Defendants constituted the consideration to support the agreement.  Second, even if the Complaint did not sufficiently allege that FedEx's forbearance of its right to sue supplied consideration for the agreement, the allegations still show that FedEx suffered a detriment by agreeing to accept the Plan Assets from the Russell Fund in four equal installments beginning on October 27, 2008.

---

[3] The fact that FedEx subsequently sued the Defendants for breach of fiduciary duty regarding these same issues illustrates that a bona fide dispute existed between the parties in mid-September – October 2008.  Defendants do not challenge FedEx's claim for breach of fiduciary duty in their Motion to Dismiss.

The Complaint alleges that FedEx demanded a complete withdrawal of its pension plan assets from both funds in mid-September 2008.  (Comp., ¶ 29).  According to the Russell direction letter, FedEx was entitled to a complete withdrawal from the Russell fund "as soon as possible but not later than thirty (30) days following receipt of such notice."[4] (Comp., Ex. A).  If Defendants would have properly honored FedEx's September 2008 demand for withdrawal from both funds, FedEx would have been entitled to a complete withdrawal from the Russell Fund well before November 1, 2008.  Therefore, in agreeing to accept the partial withdrawals from the Russell fund beginning on October 27, 2008 and ending on November 1, 2008, FedEx gave up its right under the Russell direction letter to receive its full proceeds from the Russell Fund before November 1, 2008.

Third, the Complaint does not allege and there is nothing in the Complaint (or the Russell letter itself) to suggest that the Russell direction letter related at all to the Plan Assets invested in the Bond Index Fund.  Therefore, nothing in the Complaint alleges or suggests that FedEx did not have a right to an immediate, full withdrawal from the Bond Index Fund, or a right to a full withdrawal before the settlement agreement's October 24 withdrawal deadline for the Bond Index Fund.  It can easily be inferred from the Complaint that FedEx gave up its right to an immediate, full withdrawal from the Bond Index Fund, or at least gave up its right to a full withdrawal on a date before October 24,

---

[4] For purposes of this Motion only, FedEx will assume that the Russell letter provides certain guidelines related to withdrawals from the Russell fund.  The Russell letter, however, is one of many confusing and conflicting documents which Defendants have asserted govern withdrawals from the Russell fund.  To the extent that the Complaint is unclear as to what documents govern which funds, that confusion is a result of Defendants' actions.  In any event, the Complaint sufficiently alleges that, despite the Russell letter, FedEx demanded, and had a good faith belief that it was entitled to, a complete withdrawal from both funds at some point prior to the date ultimately offered by Defendants in the compromise agreement.

in return for Defendants promise to effect <u>partial</u> withdrawals from the Bond Index Fund in eight equal installments to be completed <u>on</u> October 24.

Defendants further argue that FedEx's forbearance from suing for breach of contract cannot constitute consideration for the compromise agreement because any such claim would be invalid. This argument, however, is also unpersuasive because the forbearance to sue is not limited to the breach of contract claim. FedEx did not allege that it refrained from bringing a breach of contract suit in return for the compromise. Rather, the Complaint alleges that the compromise was reached in order to "avoid a lawsuit or claim" by FedEx. Such a lawsuit or claim was not limited to breach of contract and obviously could have included a claim for breach of fiduciary duty, which was ultimately brought by FedEx in this lawsuit. The breach of fiduciary claim certainly cannot be deemed invalid from the face of the Complaint and forbearance to bring such a claim constitutes sufficient consideration to support the compromise agreement at issue.

Even if FedEx's forbearance to sue was limited to a breach of contract claim, this forbearance would still constitute sufficient consideration because there is nothing in the Complaint to indicate that such a claim would have been invalid. Indeed, the Complaint alleges that FedEx demanded a complete and immediate withdrawal from both funds in September 2008, and Defendants refused. As a compromise to FedEx's demand, Defendants agreed to allow partial withdrawals over a period of days, to be complete on November 1 (over 30 days after FedEx's demand). It can be inferred from the Complaint that, in return for Defendants' promise, FedEx agreed not to demand or make a claim for a complete withdrawal before November 1. The Russell direction letter itself indicates that FedEx was entitled to complete withdrawal from the Russell fund before November

10

1, and nothing in the Complaint indicates that FedEx was not entitled to a complete withdrawal from the Bond Index fund before the October 24 withdrawal deadline. Thus, based on the allegations of the Complaint, FedEx had a right and a valid claim for a complete withdrawal from both funds before November 1.

In any event, it is well settled that forbearance of the right to sue is sufficient consideration even if the underlying claim given up by the promisee is doubtful or could not have been successful had the promisee brought the claim. See, e.g., Ketchen, 10 Tenn. App. at 61; Thurmond v. Whittaker, 1 Tenn. App. 111, 117 (Tenn. Ct. App. 1925). Here, even if FedEx's underlying claim for a complete withdrawal was doubtful, FedEx's giving up that claim in return for Defendants' promise is sufficient consideration because a bona fide dispute existed between the parties. [5]

Defendants cite to two cases to support their argument that forgoing an invalid claim is not sufficient consideration to support a settlement agreement resolving that claim. (Def's Mem. at p.8 n. 6). One of these cases, however, is easily distinguishable and the other case actually supports FedEx's position. In Travelers Ins. Co. v. Wing, 584 S.W.2d 789 (Tenn. 1979), plaintiff filed a worker's compensation action and then died. The worker's compensation insurer offered to settle the case with plaintiff's widow and then, two weeks later, repudiated the settlement agreement on the grounds that plaintiff's death extinguished the claim. The court held that there was no consideration to support

---

[5] Defendants cite to several cases for the proposition that forgoing a right cannot constitute consideration if there is no legitimate basis for the assertion of that right. (Def's Mem. at p. 7). None of those cases, however, involved a situation where the parties entered into a settlement agreement to resolve a dispute and the right forborne was the right to sue. In any event, nothing in the Complaint indicates that FedEx did not have a legitimate basis for a lawsuit against Defendants. Defendants seek adjudication that FedEx's claims in the Complaint, which are what FedEx agreed to forbear, are invalid without even filing a motion that attacks all of these claims.

the settlement agreement because it was clear under established law that plaintiff's death extinguished his worker's compensation claim.  The widow's forbearance of the worker's compensation claim was not consideration because she clearly had no such claim under the law.  Id. at 790-91.  In the case at hand, it cannot be determined from the face of the Complaint that FedEx did not have a colorable claim against Defendants when it agreed to forego litigation and enter into the settlement agreement.  In fact, the Complaint clearly states a viable claim for breach of fiduciary duty and Defendants do not challenge this claim in their Motion to Dismiss.

The other case cited by Defendants, F.H. Prince & Co., Inc. v. Towers Financial Corporation, 656 N.E.2d 142, 149 (Ill. App. 1995), actually supports FedEx's argument that its forbearance of legal action against Defendants constituted sufficient consideration to support the settlement agreement.   In F.H. Prince, the court held that a creditor's forbearance of legal action against a debtor constituted sufficient consideration for a settlement agreement even though the creditor's claim against the debtor was worthless due to the debtor's insolvency.  The court held that as long as the creditor had a good faith basis for its claim at the time of the settlement agreement, the forbearance of that claim constituted sufficient consideration.  Id. at 149.

In summary, the Complaint sufficiently alleges that FedEx refrained from bringing a lawsuit or claim against Defendants for their imprudent securities lending and refusal to fully redeem FedEx's pension plan assets from Defendants' funds, in return for the Defendants' promise to allow partial withdrawals over a period of days beginning on October 15 and ending on November 1.  FedEx's forbearance from bringing suit is sufficient consideration to support the compromise agreement that Defendants breached.

II.     **The Complaint Sufficiently Alleges That Both NTC and NTI Were Parties to the Settlement Agreement and Breached the Settlement Agreement.**

The Complaint alleges that NTC was the trustee and custodian of the assets of the FedEx Pension Trust.  (Comp., ¶ 11).  NTC recommended the Bond Index Fund and Russell Index Fund to FedEx and made representations to FedEx regarding both funds. (Comp., ¶¶ 17, 19, 27).  NTI managed the Bond Index Fund and the Russell Index Fund and had sole investment discretion as to the assets invested in both funds.  (Comp., ¶¶ 8, 20, 26).  NTC drafted the Russell direction letter and an employee of NTC signed the letter on behalf of NTC.  (Comp., ¶ 25, Ex. A).

The Complaint further alleges that in mid-September 2008, FedEx directed NTC to transfer the Plan Assets from the Bond Index fund to a separately managed account. (Comp., ¶ 29).  NTC advised FedEx that it could not perform the transfer due to the effects of the fund's securities lending and refused to redeem the full value of the Plan Assets from the Bond Index Fund.  (Comp., ¶ 30-31).  NTC advised FedEx of similar problems with the Russell Index Fund.  (Comp., ¶ 32).

The Complaint alleges that, after learning of the liquidity problems with both funds, FedEx demanded from NTC and NTI a complete withdrawal from both funds. (Comp., ¶ 36).  The Complaint alleges that, in early October 2008, NTI offered, as a compromise to FedEx's demand for a complete and immediate withdrawal, to fully redeem in cash or in kind all of the Plan's assets from the Bond Index Fund and Russell Index Fund in twelve installments over a period of days beginning on October 15, 2008 and ending on November 1, 2008.  (Comp., ¶¶ 37-38).[6]

---

[6] The allegations in paragraphs 37 and 38 that NTI offered and entered into the compromise agreement are typographical errors.  The allegations should read that NTC

The Complaint alleges that NTC, however, prepared and sent to FedEx the October 3, 2008 letter memorializing the compromise agreement and alleges that the letter was sent to and acknowledged and confirmed by an employee of NTC, on behalf of NTC. (Comp., ¶ 39, Exs. A, B). The Complaint alleges that FedEx and NTC entered into the agreement to resolve the dispute over Defendants' securities lending and FedEx's withdrawal requests. (Comp., ¶¶ 55-57). The Complaint further alleges that, after entering the agreement, NTC contacted FedEx and advised FedEx that NTC would not honor the agreement, (Comp., ¶ 40), and that both NTC and NTI breached the agreement by refusing to redeem the Plan Assets as agreed. (Comp., ¶¶ 55-57). The Count Two Heading in FedEx's Complaint is titled "Breach of Contract by NTI and NTC under Federal Common Law." (Comp., ¶ 53).

Any inconsistency in the allegations regarding whether NTC or NTI proposed the compromise agreement, entered into the compromise agreement, or breached the compromise agreement was caused by NTC and NTI. Indeed, while certain documents provided by Defendants indicated that NTI managed the index funds at issue and had sole investment discretion with regard to the funds (Comp., ¶¶ 20, 26), the Russell direction letter and October 3, 2008 compromise agreement were proposed, drafted and entered into by NTC. (Comp., ¶¶ 25, 39, Exs. B, C). Due to Defendants' interchanging and commingling of their corporate identities throughout this process, it was difficult for FedEx to determine which entity was proposing or entering into the agreement or which entity had the authority to do so. In any event, FedEx sufficiently alleges at different

---

offered and entered into the compromise agreement. It is obvious from the Complaint that an NTC employee drafted the October 3, 2008 letter, that the letter was addressed to NTC and that NTC confirmed receipt and agreement with the letter. (Comp., Exs. B, C).

points in the Complaint that NTC and NTI entered into the agreement and breached the agreement.  To the extent that the Complaint is confusing on this issue, FedEx requests leave to amend the Complaint to allege that both NTC and NTI committed the actions alleged in the Complaint.

**III.    The Breach of Settlement Agreement Claim is not Preempted by ERISA or Duplicative of the Breach of Contract Claim.**

The Breach of Settlement Agreement Claim is not preempted by ERISA because any effect it may have on an ERISA plan is too tenuous, remote or peripheral to "relate to" an ERISA plan.  Further, the Breach of Settlement Agreement Claim is not duplicative of the Breach of Contract Claim because the former is brought under Tennessee state law while the latter is brought pursuant to federal common law.

**A.    The Breach of Settlement Agreement Claim is not Preempted by ERISA Because Any Effect it May Have on an ERISA Plan is Too Tenuous, Remote or Peripheral to "Relate To" an ERISA Plan.**

ERISA generally preempts state laws or claims that relate to an employee benefit plan.  29 U.S.C. § 1144(a).  However, ERISA's preemptive scope is not unlimited and not every statute or state law that indirectly affects an employee benefit plan is necessarily preempted.  N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1995); Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 833, 841 (1988) (holding that ERISA does not preempt "lawsuits against ERISA plans for run of the mill state law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan" even though such claims "obviously affect[] and involv[e] ERISA plans and their trustees.").  In fact, in defining the "relate to" requirement of ERISA preemption, the United States Supreme Court has limited ERISA preemption to state law causes of action that "duplicate,

supplement[], or supplant[] the ERISA civil enforcement remedy."  Aetna Health, Inc. v.

Davila, 542 U.S. 200, 209 (2004).  On the other hand, state law claims that affect an

employee benefit plan in a tenuous, remote, or peripheral manner do not "relate to" the

plan and, thus are not preempted by ERISA.  Shaw v. Delta Airlines, 463 U.S. 85, 100 n.

21 (1983).

The Sixth Circuit has identified three categories of state law claims that ERISA

clearly preempts.  Those claims are claims that (1) mandate employee benefit structures

or their administration; (2) provide alternative enforcement mechanisms to those

provided in ERISA; or (3) bind employers or plan administrators to particular choices or

preclude uniform administrative practice, thereby functioning as a regulation of an

ERISA plan itself.  Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp., 399

F.3d 692, 698 (6th Cir. 2005).  But where the resolution of a claim does not require

interpreting the parties' responsibilities under the ERISA plan and evaluating their

performance under the plan, the claim is not preempted.  Thurman v. Pfizer, Inc., 484

F.3d 855, 862 (6th Cir. 2007).

In the case at hand, FedEx's breach of settlement agreement claim does not

implicate ERISA or affect an employee benefit plan in such a way as to warrant ERISA

preemption.   The breach of settlement agreement claim alleges that FedEx and

Defendants had a legal dispute and they resolved the dispute by entering into an

agreement whereby FedEx agreed to forgo legal action against Defendants in return for

Defendants agreeing to redeem the Plan Assets in installment payments over fifteen days.

Based on the allegations of the Complaint, neither the claim nor the settlement agreement

refers to ERISA or any employee benefit plan and is not dependent on the existence of an

employee benefit plan.  In fact, the settlement agreement and the claim exist independent of any employee benefit plan and the claim can be adjudicated without reference to an employee benefit plan.  Additionally, the resolution of the breach of settlement agreement claim will not require the Court to interpret the parties' responsibilities under ERISA or any employee benefit plan and will not require the Court to evaluate the parties' performance under any employee benefit plan.  Rather, in order to adjudicate the breach of settlement agreement claim, the Court will only have to determine whether the agreement was reached, what the terms were, and whether Defendants breached the agreement.  Thus, neither ERISA nor any employee benefit plan is implicated at all in the breach of settlement agreement claim.

Not only does the breach of settlement agreement claim not implicate an employee benefit plan or ERISA, but it also does not "duplicate, supplement or supplant" an ERISA civil enforcement remedy or provide an "alternative enforcement mechanism" to those provided in ERISA.  ERISA does not provide a civil enforcement mechanism for Defendants' failure to abide by the terms of the settlement agreement in this case, nor does ERISA provide a remedy for Defendants' breach of the settlement agreement.

While FedEx does bring a separate breach of fiduciary duty claim against Defendants under ERISA (29 U.S.C. § 1132(a)(2)), that claim relates to Defendants' imprudent securities lending and failure to comply with the Trust documents.  The breach of settlement agreement claim, on the other hand, relates to Defendants actions of proposing, entering into and breaching the settlement agreement.  Therefore, the breach of settlement agreement claim is separate from, and has separate factual allegations than,

the breach of fiduciary duty claim.  Consequently, the breach of settlement agreement claim does not duplicate, supplement or supplant an ERISA civil enforcement remedy.

Courts have found state law claims for breach of a settlement agreement not preempted by ERISA, even when the claims have some relation to an employee benefit plan.  See, e.g., Graham v. The Balcor Company, 146 F.3d 1052, 1055 (9th Cir. 1998) (ERISA did not preempt state law breach of settlement claim alleging a failure to pay employee benefits pursuant to settlement agreement, because settlement did not implicate the administration of an employee benefit plan); Brokaski v. Delco Systems Operations et al., 2000 U.S. App. LEXIS 3222 at *2 (9th Cir. 2000) (same); Jones v. Amalgamated Ins. Agency Services, Inc., 734 F.2d 14, 1984 U.S. App. LEXIS 14333 at *6 (6th Cir. 1984) (breach of oral promise to provide benefits as part of settlement agreement not preempted by ERISA because agreement was collateral to an employee benefit plan); Lemley v. Ford Motor Company, 1999 U.S. App. LEXIS 19458 at *5 (6th Cir. 1999) (summary judgment on basis of ERISA preemption of state law settlement agreement claim not appropriate because it was not clear whether terms of employee benefit plan were incorporated in settlement agreement); Hilaire v. Industrial Roofing Co. et al., 346 F. Supp. 2d 212, 214 (D. Maine 2004) (state law claim for breach of settlement agreement not preempted by ERISA because settlement agreement did not expressly mention or invoke ERISA or an employee benefit plan).

Courts have also found certain breach of contract actions not to be preempted by ERISA where the action or underlying contract has a tenuous relation to an employee benefit plan.  See, e.g., Great West Life & Annuity Ins. Co. v. Information Systems & Networks Corporation, 523 F.3d 266, 273  (4th Cir. 2008) (contractor's breach of contract

18

claim against plan sponsor for failure to reimburse contractor for benefit payments fronted by contractor not preempted by ERISA because claim did not require interpretation of the plan terms or depend upon the existence of an ERISA plan); Venezuela v. Massimo Zanetti Beverage USA, Inc., 525 F. Supp. 2d 781, 789 (E.D. Va. 2007) (state law claim for breach of employment agreement not preempted by ERISA where basis of claim was that employer failed to pay employee benefits as promised in the agreement); Finishmaster, Inc. v. Wausau Benefits, Inc., 425 F. Supp. 2d 933, 938-939 (S.D. Ind. 2006) (employer's breach of contract claim against third party administrator for failing to pay employee's health care expenses not preempted by ERISA because claim did not require court to interpret or apply any of the terms of the employee benefit plan);  Four-County Community Services, Inc. v. FIA Administrators, Inc., 2003 U.S. Dist. LEXIS 23462 at *7-8  (M.D.N.C. 2003) (employer's breach of contract claim against plan administrator for failure to file claim with excess insurer not preempted by ERISA because employer's suit stemmed from its contractual relationship with the administrator and functioned irrespective of the terms of the employer's employee benefit plan); National Health Plan Corp. v. Road Carriers Local 707, 1991 U.S. Dist. LEXIS 4816 at *11-13 (S.D.N.Y., April 15, 1991) (claim for breach of contract by provider of administrative services against employee benefit plan for plan's failure to pay fees to provider based on subsequent oral understanding not preempted by ERISA because provider's right to relief was not premised on plan's status as an employee benefit plan); AFL Hotel & Restaurant Workers Health & Welfare Trust Fund v. Bosque, 132 P.2d 1229, 1238 (Hawaii 2006) (trustee's claim against beneficiary for

breach of subrogation agreement for failure to reimburse medical expenses paid by trustee under benefit plan not preempted by ERISA).

Defendants cite to three cases to support their argument that FedEx's breach of settlement claim is preempted by ERISA.  (Def's Mem. at p. 11).  All three of these cases, however, are clearly distinguishable from the case at hand.  In <u>Zuniga v. Blue Cross & Blue Shield</u>, 52 F.3d 1395 (6th Cir. 1995), the Court held that the plaintiff's breach of settlement agreement claim against the defendant insurance company was preempted by ERISA because the settlement agreement specifically referred to an employee welfare plan and the court could not adjudicate plaintiff's breach of settlement agreement claim without interpreting the plan.  Specifically, Zuniga, a physician, contended that the settlement agreement required that he be a preferred provider under the benefit plan, which required the court to interpret the plan.  <u>Id.</u> at 1402.  By contrast, FedEx does not allege that the settlement agreement between the parties referred to an employee welfare plan or any plan documents.  Thus, the settlement agreement can be adjudicated without reference to any plan documents.  <u>Zuniga</u>, therefore, is clearly distinguishable from the case at hand as the absence of these facts in <u>Zuniga</u> likely would have produced a different result.[7]

The second case relied upon by Defendants, <u>Board of Trustees of Hotel & Rest. Employees Local 25 v. Madison Hotel, Inc.</u>, 97 F.3d 1479 (D.C. Cir. 1996), is also clearly distinguishable from the case at hand.  In that case, the Court held that a breach of settlement agreement claim by fiduciaries of a welfare benefit fund against an employer

---

[7] It should be noted that the holding in <u>Zuniga</u> was not unanimous.  Circuit Judge David Nelson dissented from the Court's holding on ERISA preemption in a detailed and well reasoned opinion.  <u>Id.</u> at 1402-1406.

was preempted by ERISA where the settlement agreement specifically incorporated and reserved ERISA remedies for the fund in the event of breach.  ERISA preemption was warranted, the Court held, because the Court would have to interpret the parties' rights and obligations under ERISA in order to adjudicate the breach of settlement agreement claim.  Id. at 1485, 1488.  In this case, FedEx does not allege that the settlement agreement incorporated any ERISA remedies or other provisions and FedEx's rights under the settlement agreement are not dependent on ERISA in any manner.  The Court in Board of Trustees acknowledged this distinguishing factor and recognized that it may have provided a different result in the preemption analysis:

> We need not reach out to decide the question of whether the district court would have jurisdiction if, rather than reserving and incorporating the Funds' ERISA remedies in the event of breach by the Hotel, the settlement agreement had made no reference whatsoever to ERISA and had instead provided for some kind of lump sum liquidated damages.

Id. at 1488 n. 15.

The final case relied upon by Defendants, Bridge v. McHenry Truck Lines, Inc., 1998 U.S. Dist. LEXIS 11612 (N.D. Ill. 1998), does not support Defendants' argument for ERISA preemption but, in fact, supports FedEx's position.  In Bridge, the trustees of a pension fund sued an employer for breach of a settlement agreement for the employer's failure to repay delinquent contributions to the fund in accordance with the settlement agreement.  In its opinion, the Court stated that the breach of settlement agreement claim was preempted by ERISA—but only in the context of subject matter jurisdiction—because the Court retained jurisdiction of the breach of settlement agreement claim and did not dismiss the claim.  Rather, the Court allowed the claim to proceed, interpreted the claim in accordance with Illinois state common law, and ultimately enforced the breach

of settlement agreement claim against the employer.  <u>Id.</u> at *8-19.  <u>Bridge</u>, therefore, supports FedEx's argument that a state law breach of settlement agreement claim that merely indirectly relates to an ERISA plan is not preempted by ERISA and can be enforced according to state law.

In summary, FedEx's breach of settlement agreement claim is not preempted by ERISA because it is not dependent on the interpretation of ERISA or any employee benefit plan and it does not supplant any of ERISA's civil enforcement remedies.

> **B.**     **FedEx's Breach of Settlement Agreement Claim is not Duplicative of its Breach of Contract Claim Because the Breach of Settlement Agreement Claim is Brought Under Tennessee State Law While the Breach of Contract Claim is Brought Under Federal Common Law.**

Courts have recognized that Congress intended for the judiciary to develop and apply a federal common law to actions premised on the contractual obligations created by ERISA plans.  <u>See</u>, <u>e.g.</u>, <u>Whitworth Bros. Storage Co. v. Central States, Southeast and Southwest Areas Pension Fund</u>, 794 F.2d 221, 235-36, n. 23 (6th Cir. 1986).  The use of federal common law in connection with ERISA is limited, however, to those instances where ERISA is silent or ambiguous.  <u>Muse v. IBM</u>, 103 F.3d 490, 495 (6th Cir. 1996).

FedEx's breach of contract claim under federal common law is based upon Defendants' failure to honor the settlement agreement reached between the parties where FedEx agreed to forego litigation in return for Defendants' agreement to fully redeem FedEx's plan assets in installment payments over a period of fifteen days.  ERISA does not provide a civil enforcement mechanism or remedy for this type of claim.  Thus, the breach of contract claim is a proper claim under federal common law.

The breach of settlement agreement claim is not duplicative of the breach of contract claim because the former is brought under Tennessee state law and the latter is

brought under federal common law.  Thus, the two claims, while sharing supporting factual allegations, are separate and distinct claims brought under different governing laws.  As such, the breach of settlement agreement claim under Tennessee state law should not be dismissed as duplicative.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss Counts Two and Three of the Complaint.  If the Court determines that Defendants' Motion should be granted, FedEx requests leave to amend to cure any pleading deficiencies.

Dated this 5th day of March, 2009.

Respectfully Submitted,

  /s/  Justin M. Ross
Connie Lewis Lensing (TN Bar No. 14025)
R. Jeffery Kelsey (TN Bar No. 15522)
Michael W. Higginbotham (TN Bar No. 016141)
Justin M. Ross (TN Bar No. 019571)
Federal Express Corporation Legal Department
3620 Hacks Cross Road, Building B, 3rd Floor
Memphis, TN 38125
901-434-8600

Chris J. Rillo (To be admitted)
Ted Scallet  (To be admitted)
Groom Law Group, Chartered
1701 Pennsylvania Ave., N.W.
Washington, D.C. 20006
202-857-0620

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing has been served via

the Court's electronic filing system this 5th day of March, 2009.


_____/s/  Justin M. Ross_____