THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| FEDEX CORPORATION,  )  <br> FEDEX CORPORATION  ) <br> EMPLOYEES' PENSION PLAN,  ) <br> ) <br> Plaintiffs,  ) <br> ) <br> v.  ) <br> ) <br> THE NORTHERN TRUST COMPANY,  ) <br> and NORTHERN TRUST  ) <br> INVESTMENTS, N.A.,  ) <br> ) <br> Defendants.  ) | Case No. 2:08-cv-2827-dkv |

DEFENDANTS' REPLY MEMORANDUM
IN SUPPORT OF THEIR MOTION TO DISMISS
COUNTS TWO AND THREE OF THE COMPLAINT

Defendants The Northern Trust Company ("NTC") and Northern Trust Investments, N.A. ("NTI") (collectively, "Defendants"), respectfully submit this Reply Memorandum in Support of Their Motion to Dismiss Counts Two and Three of the Complaint.[1] In responding to the Defendants' Motion, the Plaintiffs attempt to shift their pleading burden to the Defendants and repeatedly contradict, mischaracterize, and even rewrite, the allegations in their Complaint. These tactics do nothing to salvage the Plaintiffs' claims that the Defendants breached alleged agreements to allow immediate withdrawal, in cash or in kind, of all assets invested in the two

---

[1] Plaintiffs' have incorrectly styled their Memorandum ("Mem. Opp.") as "*Defendants'* Opposition To *Plaintiffs'* Motion To Dismiss Counts Two and Three Of the Complaint." Of course, it is the Defendants who have filed the Motion to Dismiss and the Plaintiffs who oppose that motion. The Memorandum In Support of Defendants' Motion To Dismiss Counts Two And Three Of The Complaint shall be referred to herein as "Def. Mem." References herein to "Plaintiffs" are, collectively, to FedEx Corporation ("FedEx") and FedEx Corporation Employees' Pension Plan ("Plan").

collective funds at issue in this case. To the contrary, they serve as an implicit acknowledgment of the inadequacy of the Complaint's allegations and even provide additional reason to dismiss both Counts Two and Three as to both Defendants.

## ARGUMENT

**I.  Counts Two And Three Should Be Dismissed Because Plaintiffs Do Not Plead Any Facts To Support An Inference That The Alleged October 2008 "Compromise" Agreements On Which The Claims Are Based Were Supported By Any Consideration.**

Counts Two and Three of the Complaint both rest on the same "compromise" agreements[2] that the parties allegedly entered into in October 2008, after Plaintiffs demanded "a complete and immediate withdrawal," in cash or index securities, from the Funds. Cmplt. ¶¶ 37-38. In their initial Memorandum, Defendants demonstrated that Counts Two and Three should be dismissed for lack of consideration; if anything, Plaintiffs' allegations indicate that the alleged "compromise" agreements were *not* supported by consideration because FedEx had no right to "immediate withdrawal" of the Plan's assets "in cash or in kind" in the first place. Def. Mem. at 5-9. Plaintiffs offer several arguments in response, but none withstands scrutiny.

Plaintiffs begin by devoting several pages of their brief to the proposition that "[f]orbearance of the right to sue, refraining from bringing suit, or the avoidance of litigation is universally recognized as sufficient consideration to support a settlement agreement." Mem. Opp. at 5. But this argument is a straw man, because the issue before the Court is not whether a release of claims or forbearance from filing suit may serve, *theoretically*, as valid consideration under some set of facts. Rather, the issue presented by the Defendants' motion is whether "[t]he

---

[2]  We use the plural "agreements" because Plaintiffs allege one "compromise" agreement with respect to withdrawal from the NTGI-QM Collective Daily Long-Term Government Bond Index Fund – Lending ("Long-Term Bond Index Lending Fund") and a second "compromise" agreement with respect to withdrawal from the NTGI-QM Collective Daily Russell 2000 Index Fund – Lending ("Russell 2000 Index Lending Fund") (collectively, the "Funds"). *See* Cmplt. ¶¶ 37-38.

2

Complaint in *this* case sufficiently alleges that FedEx's forbearance of its right to sue constituted consideration for the compromise agreement." *Id.* at 7 (emphasis added). It plainly does not.

Plaintiffs acknowledge that to avoid dismissal, the Complaint must plead "enough *facts* to state a claim to relief that is plausible on its face." *Id.* at 5 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added) (internal quotation marks omitted)). But while the Complaint contains a "Facts" section that runs 31 paragraphs (¶¶ 11-42), none of those paragraphs describes *any* threats of litigation by Plaintiffs, *any* discussion between FedEx and the Defendants of even the possibility of litigation, or *any* discussion of the desirability of reaching a compromise to avoid such litigation.

To be sure, Plaintiffs assert in their *brief* that "[i]n fact, the Complaint expressly alleges that the compromise agreement was reached 'in order to avoid a lawsuit or claim' by FedEx against Defendants," and that "[t]he Complaint further alleges that FedEx refrained from immediately bringing a lawsuit or claim against Defendants in return for their promise to fully redeem FedEx's Plan Assets from both funds in installment payments over a period of fifteen days beginning on October 15, 2008 and ending on November 1, 2008." Mem. Opp. at 7-8. But it is telling that the *only* allegation in the *entire Complaint* that Plaintiffs cite as support for the sweeping assertions in their brief is paragraph 62 of Count Three, which states, in full:

> Prior to entry of the agreement, FedEx indicated its disapproval of defendants' action and belief that its rights were violated. To avoid a lawsuit or claim, defendants proposed the agreement, which FedEx accepted.

This utterly conclusory allegation – which is not even included in Plaintiffs' breach of contract claim in Count Two – falls well short of what *Twombly* and its progeny require.[3]

---

[3] To the extent that Plaintiffs' brief is intended to suggest that there are other facts, not alleged in the Complaint, that support their conclusory claims, that tactic must fail. Putting aside the question of why, if such facts exist, Plaintiffs failed to include them in the Complaint itself, it is axiomatic that in the context of motion to dismiss proceedings, plaintiffs may not bolster the inadequate allegations of their

3

Plaintiffs acknowledge that the Complaint lacks allegations that there was any contemplation or discussion of potential litigation when they resort to arguing that "[f]orbearance to sue may be *implied* or *inferred* from the conduct of the parties and the nature of the transaction and courts may look behind the recitals of written instruments to determine the actual consideration." Mem. Opp. at 5-6 (emphasis added). This argument is equally meritless because Plaintiffs have not alleged any *facts* in the Complaint concerning "the conduct of the parties and the nature of the transaction[s]" that would permit such an "inference." Nor is any support for Plaintiffs' assertion of "forbearance" somehow to be found "behind the recitals [of] the written instruments." *Id.* The "instruments" that Plaintiffs say "memorialized" (Cmplt. ¶ 55) the alleged agreement regarding the Long-Term Bond Index Lending Fund (Cmplt., Exs. B & C) say nothing at all that would permit the inference Plaintiffs suggest. And Plaintiffs' Complaint does not identify *any* documents that supposedly "memorialize" the separate alleged agreement regarding the Russell 2000 Index Lending Fund.

Including such factual allegations in the Complaint, if true, should have been a simple matter for Plaintiffs. *If* Plaintiffs threatened to sue the Defendants, engaged in settlement discussions, and entered into agreements in which the consideration was their forbearance from filing suit, they could have easily said so in the Complaint itself. But as discussed in Defendants' initial Memorandum (at 3-5), Plaintiffs conspicuously fail to allege even the most basic facts, circumstances, and contract terms that one would expect to see pleaded *if* the parties had entered into a settlement agreement to avoid threatened litigation. The dearth of facts alleged about these purported agreements is no accident; there simply are no facts to plead.

---

complaint with bare assertions in their *brief*. *E.g.*, *Middlebrook v. Tennessee*, No. 07-2373, 2008 WL 2002521, at * 6 (6th Cir. May 6, 2008) ("[A] party cannot amend its [insufficient] complaint by a response . . . filed in opposition to a motion to dismiss." (citation and internal quotation marks omitted)).

4

The factual void in the Complaint renders utterly untenable Plaintiffs' claim that they have pleaded "enough *facts* to state a claim to relief that is plausible on its face" (Mem. Opp. at 5 (quoting *Twombly*, 550 U.S. at 570) (emphasis added)), or at least sufficient facts to permit the asserted "forbearance from litigation" to be inferred. Indeed, the few facts that Plaintiffs *have* alleged – and those they have failed to allege – render their assertions highly *im*plausible. For example, Plaintiffs' assertion that the parties entered into the alleged "settlement agreement" concerning the Russell 2000 Index Lending Fund to avoid litigation, but did not bother to memorialize *that* agreement in writing (in contrast to the alleged agreement regarding the Long-Term Bond Index Lending Fund) is "[im]plausible on its face." *Id.* at 5. By the same token, if, as Plaintiffs assert, NTC's motivation to enter into the alleged agreement on October 3, 2008 concerning the Long-Term Bond Index Lending Fund was to avoid a threatened lawsuit by FedEx, why would NTC fail to make any reference at all to the alleged litigation release that purportedly motivated it to enter into the agreement? And why would it have "reneged" on October 14 – as Plaintiffs allege (Cmplt. ¶¶ 39-40) – a scant 11 days later?[4] Plaintiffs may not ask the Court to draw inferences that simply make no sense. *See First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 772 (2d Cir. 1994) (concluding that no reasonable inferences could be drawn from defective allegations that "def[ied] logic"); *Caldwell v. City of Elwood*, 959 F.2d 670, 672-73 (7th Cir. 1992) (explaining that drawing reasonable inferences in favor of plaintiff does not include bridging factual gaps in complaint or making leaps of logic); *Faulkner v. Verizon Commc'ns, Inc.*, 189 F.Supp.2d 161, 171 (S.D.N.Y. 2002) (granting motion to dismiss

---

[4] In evaluating the plausibility of Plaintiffs' claims, it is also worth noting that if the parties entered into the agreements that the Plaintiffs describe, then the Plaintiffs' claim in Count One for breach of fiduciary duty would be barred by the terms of the alleged agreements.

5

after concluding that no reasonable inference of fraudulent intent existed where purported motive was "belied by logic").

Plaintiffs have not even alleged facts plausibly suggesting that there were "bona fide and reasonable grounds" (Mem. Opp. at 6 (quoting *Service Stamp Co. v. Ketchen*, 10 Tenn. App. 59, 61 (Tenn. Ct. App. 1929))) for Plaintiffs to believe that they had a valid claim against the Defendants. As Defendants noted in their initial Memorandum (at 3, 7-8), the Complaint does not identify *any* term of *any* agreement that was violated by the Defendants' alleged refusal to redeem immediately all of the Plan assets "in cash or in kind." Nor does the Complaint allege that the Defendants' actions were *not* authorized by the agreements that governed the Plan's investments in the Funds. Indeed, the Complaint includes no allegations at all regarding the terms of the Plan's investment in either of the Funds, much less an allegation that the terms of that investment entitled Plaintiffs to immediate redemption of the investments "in cash or in kind." Again, *if* there were "bona fide and reasonable grounds" for Plaintiffs to believe they had a valid claim, it should be easy enough for Plaintiffs to attach the governing documents as Exhibits to the Complaint, or at least to describe their operative provisions. By failing to do so, Plaintiffs have failed to meet their burden of pleading facts to permit a reasonable inference that there was a "bona fide" and "reasonable" dispute. Indeed, as discussed above, to the extent that facts are alleged at all, they *undermine* that inference. *See id.* at 4, 8-9 (citing Cmplt., Ex. A (the Russell 2000 Index Lending Fund direction letter)).[5]

---

[5] The situation here is no different from a simple case where a plaintiff purchases a one-year bank CD. Suppose that after nine months, plaintiff demands return of the principal. Based on the term of the CD, the bank refuses the demand but, in an effort to accommodate its customer's needs, offers to return the principal in three installments over the next three months. In that case, the plaintiff could not sue to enforce that agreement because it had no right to the return of its principal until the end of the year. And the plaintiff in that case could not make its claim any more "plausible" by simply omitting to allege that the term of the CD was one year. But that is just what the Plaintiffs here are trying to do. They have omitted reference to the documents that govern withdrawals from the Funds to obfuscate whether they

6

Finally, Plaintiffs try to avoid their pleading deficiencies by arguing that "nothing in the Complaint indicates that FedEx did *not* have a legitimate basis for a lawsuit against Defendants." Mem. Opp. at 11 n.5 (emphasis added). *See also id.* at 9 ("[N]othing in the Complaint alleges or suggests that FedEx did *not* have a right to an immediate, full withdrawal from the Bond Index Fund, or a right to a full withdrawal before the settlement agreement's October 24 withdrawal deadline for the Bond Index Fund." (emphasis added)). But Plaintiffs have it backwards, for as Plaintiffs themselves acknowledge elsewhere in their Memorandum, it is *their* burden to allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 5 (quoting *Twombly*, 550 U.S. at 570).[6] In ruling on a motion to dismiss, a court is not required to (and indeed, cannot) assume the existence of facts that the plaintiff has not alleged. *Twombly*, 550 U.S. at 563 n.8; *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 328 (6th Cir. 2006). At bottom, however, that is the argument that the Plaintiffs have offered in response to Defendants' motion.

## II.   Counts Two and Three Should Be Dismissed Because NTI Was Not A Party To The Alleged Agreements And NTC Had No Authority To Redeem Assets From The Funds.

### A.   Counts Two And Three Should Be Dismissed As To NTI Because Plaintiffs *Now* State That The Alleged Agreements At Issue Were Entered Into With NTC (Not NTI).

---

have a right to immediate withdrawal in the manner they demanded. But absent an allegation that they *have* such a right – which they have not made (and cannot make because in fact the governing documents do not provide such a right) – it cannot plausibly be inferred that such a right exists.

[6] Plaintiffs also assert the agreements were supported by consideration because "[a]ccording to the Russell direction letter, FedEx was entitled to a complete withdrawal from the Russell Fund" within thirty days of the demand, and further assert that in paragraph 29 of the Complaint they allege that FedEx demanded a complete withdrawal of its pension plan assets from both funds in mid-September 2008. Mem. Opp. at 9. But Plaintiffs are again distorting what their own Complaint alleges because the "demand" for complete withdrawal "from both index funds" is alleged in paragraph 36 of the Complaint – not paragraph 29 – and paragraph 36 does not allege that the demand was made in "mid-September 2008" or allege any date at all. If Plaintiffs deem the date of their demand significant, they should, of course, have actually alleged when they made it.

7

In our opening Memorandum, we explained that Counts Two and Three should be dismissed as to NTC because, *inter alia*, Plaintiffs alleged in the "Facts" section of their Complaint that the alleged agreements on which Counts Two and Three rest were entered into with NTI, not NTC. Indeed, Plaintiffs' caption makes explicit reference to "*NTI*'s Agreement to Fully Redeem the FedEx Pension Trust Assets From Both Index Funds" (emphasis added). *See* Def. Mem. at 9-11 (citing Cmplt. ¶¶ 37-38). We noted, however, that Plaintiffs allege just the opposite in Count Two itself; there, the alleged agreements were with NTC, and not NTI. *See id.* at 10 n.7 (citing Cmplt. ¶¶ 55-56). We concluded that "[p]resumably, this allegation against NTC is a typographical error," because otherwise, Plaintiffs' own allegations would be completely contradictory. *See id.* We also noted (*id.*) that Plaintiffs could not pursue claims against *both* NTI and NTC based on "contradictory assertions contained in the complaint" about *which* entity it supposedly reached the agreements with. *S.E. Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 678-79 (6th Cir. 2006).

In their Memorandum in Opposition, Plaintiffs do not contest that they may not rely on such utterly "contradictory assertions" to pursue claims against *both* NTI and NTC. Rather, Plaintiffs now state that there *was* a "typographical error," but what they are *actually* asserting is that the alleged agreements were entered into by NTC, *not* NTI:

> The allegations in paragraphs 37 and 38 that NTI offered and entered into the compromise agreement are typographical errors. The allegations should read that NTC offered and entered into the compromise agreement. It is obvious from the Complaint that an NTC employee drafted the October 3, 2008 letter, that the letter was addressed to NTC and that NTC confirmed receipt and agreement with the letter. (Comp., Exs. B, C).

*See* Mem. Opp. at 13-14 n.6.

Given this acknowledgement by Plaintiffs, Counts Two and Three must be dismissed at least as to NTI. Plaintiffs may not pursue breach of contract claims against NTI based upon

8

agreements that they now say "NTC offered and entered into" and that they now say "an NTC employee" memorialized and "confirmed."

Plaintiffs halfheartedly assert "that *both* NTC and NTI *breached* the agreement by refusing to redeem the Plan assets as agreed," *id.* at 14 (citing Cmplt. ¶¶ 55-57) (emphasis added), as if that conclusory assertion somehow were enough to keep the contract claims against NTI alive. But it is not, for NTI obviously cannot be liable for "breach" of an agreement to which, Plaintiffs now concede, NTI was not a party. *See id.* ("[t]he Complaint alleges that FedEx and NTC entered into the agreement"). *E.g.*, *Wierbicki v. Advatech, LLC*, No. 1:06-CV-269, 2007 WL 2725944, *5 (E.D. Tenn. Sept. 17, 2007) (dismissing breach of contract claim where plaintiff failed to allege that defendant was party to employment contract with plaintiff); *accord Esterkyn v. Van Hedge Fund Advisors, Inc.*, 108 F. Supp.2d 876, 894 (M.D. Tenn. 1999) ("A general rule of Tennessee contract law is that only the parties to a written agreement are bound by its terms." (citation omitted)). Plaintiffs cannot maintain a claim against NTI based on nothing more than a conclusory assertion that "both NTC and NTI breached the agreement."[7]

Plaintiffs try to blame their confusion on the Defendants, arguing that "[a]ny inconsistency in the allegations regarding whether NTC or NTI proposed the compromise agreement, entered into the compromise agreement, or breached the compromise agreement was caused by NTC and NTI," because "[d]ue to Defendants' interchanging and commingling of their corporate identities throughout this process, it was difficult for FedEx to determine which

---

[7] As discussed in Defendants' opening brief (at 6-7), a federal complaint "requires more than the bare assertion of legal conclusions." *S.E. Tex. Inns,* 462 F.3d at 671. But even the conclusory allegation of "breach[]" by NTI is belied by Plaintiffs' own allegations concerning NTC. *See* Cmplt. ¶ 40 ("On October 14, 2008, the day before the first redemption installment, NTC contacted FedEx and advised that *it* would not honor *its* agreement to redeem the Plan's assets in the manner to which *it* had agreed.") (emphasis added). *See also* Mem. Opp. at 14 (citing Cmplt. ¶¶ 40, 55-57) ("The Complaint further alleges that, after entering the agreement, NTC contacted FedEx and advised FedEx that NTC would not honor the agreement.").

entity was proposing or entering into the agreement or which entity had the authority to do so." Mem. Opp. at 14. But this conclusory assertion cannot salvage their claims against NTI either. Beyond the fact that Plaintiffs' purported confusion about whom they were dealing with further manifests the implausibility of their claim that they settled potential litigation claims, the Complaint does not include any allegation whatsoever to support the claim that the Defendants obscured or commingled their corporate identities in their dealings with the Plaintiffs. Indeed, Plaintiffs' Complaint alleges that NTC and NTI are *separate* corporate entities with *separate* relationships to Plaintiffs. *See* Cmplt. ¶¶ 7-8. Moreover, Plaintiffs' suggestion that they somehow could not "determine which entity was proposing or entering into the agreement or which entity had authority to do so" cannot be squared with their assertion, citing Exhibits B and C to the Complaint, that "NTC offered and entered into the compromise agreement" and "*[i]t is obvious* from the Complaint that an NTC employee drafted the October 3, 2008 letter, that the letter was addressed to NTC and that NTC confirmed receipt and agreement with the letter." Mem. Opp. at 13-14 n.6 (emphasis added).[8]

Accordingly, Counts Two and Three should be dismissed as to NTI with prejudice and without leave to replead. Plaintiffs have already substantively revised their claim by correcting their "typographical errors" (*id.*), and any further amendment as to NTI would be futile because "it is obvious" that if there was an agreement at all, it was with NTC, not NTI. As a matter of law, Plaintiffs cannot pursue a claim against NTI for breach of a contract that Plaintiffs say "NTC offered and entered into." *Id.*

      **B.**     **Counts Two And Three Should Be Dismissed As To NTC As Well Because The Complaint Shows That NTC Lacked Authority To Enter Into The Alleged Agreements Concerning Disposition Of The Funds' Assets.**

---

[8]     Plaintiffs' purported confusion is also utterly inconsistent with Plaintiffs' other assertion that their naming NTI as the party to the alleged agreements was simply a "typographical error."

10

As discussed above, it is now clear that Plaintiffs contend that the alleged agreements underlying Counts Two and Three were with NTC. But as we noted in our opening brief (at 9-11), the Complaint itself alleges that NTC had no authority to bind NTI in the exercise of its duties as trustee of the collective Funds. NTC had no ability to compel NTI to redeem Plan assets; as Plaintiffs allege, NTI "is the trustee and manages the collective funds at issue in this case" (Cmplt. ¶ 8), and had "sole investment discretion as to the assets invested in the Collective Trust," including the assets invested in the Funds. *Id.* ¶¶ 20, 26; *accord* Mem. Opp. at 13 ("NTI managed the Bond Index Fund and the Russell Index Fund and had sole investment discretion as to the assets invested in both funds.") On the other hand, Plaintiffs allege that NTC was merely "the trustee of the FedEx Pension Trust" and "the securities lending agent for NTI." Cmplt. ¶ 7. Plaintiffs do not allege that either position would authorize NTC to bind NTI to distribute assets in any particular manner or on any particular schedule. Plaintiffs do not contend otherwise and, accordingly, Counts Two and Three should be dismissed as to NTC.

**III.    Count Three Should Be Dismissed Because It Is Preempted By ERISA Or Duplicative Of Count Two, As Plaintiffs' Own Memorandum In Opposition Now Makes Clear.**

In their opening brief, the Defendants demonstrated that the "breach of settlement agreement" claim in Count Three should be dismissed either on preemption grounds or because it is duplicative of the "breach of contract" claim in Count Two. Def. Mem. at 11-12. Far from showing otherwise, Plaintiffs' Memorandum in Opposition only confirms that Count Three must be dismissed on one, or the other, of these grounds.

**A.    Count Three Is Preempted.**

Plaintiffs acknowledge that "ERISA generally preempts state laws or claims that relate to an employee benefit plan." Mem. Opp. at 15 (citing 29 U.S.C. § 1144(a)). They also

acknowledge that ERISA preempts "state law causes of action that 'duplicate, supplement[], or supplant[] the ERISA civil enforcement remedy.'" *Id.* at 15-16 (quoting *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 209 (2004)). Plaintiffs assert, however, that Count Three is not preempted by ERISA because "ERISA does not provide a civil enforcement mechanism for Defendants' failure to abide by the terms of the settlement agreement in this case, nor does ERISA provide a remedy for Defendants' breach of the settlement agreement." *Id.* at 17. According to Plaintiffs, "[w]hile FedEx does bring a separate breach of fiduciary duty claim against Defendants under ERISA (29 U.S.C. § 1132(a)(2)), that claim relates to Defendants' imprudent securities lending and failure to comply with the Trust documents." *Id.* "The breach of settlement agreement claim," the Plaintiffs continue, "relates to Defendants' actions of proposing, entering into and breaching the settlement agreement." *Id.* Therefore, they argue, "the breach of settlement agreement claim is separate from, and has separate factual allegations than, the breach of fiduciary duty claim," and "the breach of settlement agreement claim does not duplicate, supplement or supplant an ERISA civil enforcement remedy." *Id.* at 17-18; *see also id.* at 21 ("FedEx's rights under the settlement agreement are not dependent on ERISA in any manner").

But, once again, Plaintiffs' assertions are contrary to the allegations in their own Complaint. Their Memorandum denies any connection between their "settlement" claim and their breach of fiduciary duty claim, but in paragraph 49 of their Complaint, the Plaintiffs invoke the very same alleged October 2008 agreements *in Count One* as part of their *ERISA claim* for breach of fiduciary duty: "*The failure to return the value of the Plan's* assets in accordance with the October agreements compromising the Plan's claims referenced above *violated the terms of* the Collective Trust, the descriptions of the funds and *the October 2008 agreements between the parties compromising the Plan's claims*." (Emphasis added.) Further, Plaintiffs expressly

12

acknowledge that their claim under federal common law in Count Two for breach of the October 2008 agreements is available only "to supplement ERISA's provisions" and "[t]o the extent that FedEx is unable to obtain relief for NTC's violations of ERISA's fiduciary duty." *See* Cmplt. ¶ 54. The same is necessarily true of Count Three, because Plaintiffs acknowledge that Count Two and Count Three are both based on the very same "compromise" or "settlement" agreements that Plaintiffs now say FedEx entered into with NTC in October 2008. *Compare id.* ¶¶ 55-56 (of Count Two), *with id.* ¶ 61 (Count Three). As Plaintiffs' Memorandum puts it, "the two claims . . . shar[e] supporting factual allegations." Mem. Opp. at 23. In addition, Count Three expressly incorporates by reference (Cmplt. ¶ 59) "all allegations contained in paragraphs 1 through 58 as if fully set forth herein," including, of course, the allegations of paragraphs 49 and 54 and the entire ERISA breach of fiduciary duty claim. Under these circumstances, Plaintiffs' contention that Count Two "supplements" the breach of fiduciary duty claim in Count One while Count Three does not is plainly baseless.[9] *See, e.g.*, *Toledo Blade Newspaper Unions Blade Pension Plan v. Inv. Performance Servs., LLC*, 373 F. Supp. 2d 735, 746-47 (N.D. Ohio 2005) (concluding that ERISA preempted plaintiffs' state law claims against non-fiduciaries because the claims were "premised on the same factual allegations" as their ERISA breach-of-fiduciary-duty claim); *Trs. of the Carpenters' Pension Trust Fund-Detroit & Vicinity v. AAA Mortg. Corp.*, 269 F. Supp. 2d 931, 936 (E.D. Mich. 2003) (concluding that ERISA preempted plaintiffs' state law claim that was "based upon the same allegations used to support the [plaintiffs'] ERISA claim" and sought the same relief).

---

[9] It is telling as well that Plaintiffs concede that this Court's jurisdiction over each of the claims asserted in the Complaint is based solely on ERISA. The Complaint asserts only that "[t]his Court has subject matter jurisdiction over this matter under ERISA, 29 U.S.C. § 1132(e)(1)." Cmplt. ¶ 9. Plaintiffs do not claim that this Court has supplemental jurisdiction over any non-ERISA-related claims.

13

Indeed, FedEx invokes the fiduciary duty claim in an effort to prop up the settlement claims. As discussed above, Plaintiffs argue that the alleged October 2008 agreements were supported by consideration by arguing that they agreed to forego assertion of the claim for breach of fiduciary duty, "which was ultimately brought by FedEx in this lawsuit," and that "forbearance to bring such a [fiduciary duty] claim constitutes sufficient consideration to support the compromise agreement at issue." Mem. Opp. at 10. Plaintiffs' invocation of their breach of fiduciary duty claim to attempt to establish consideration for the breach of contract claims asserted in Counts Two and Three belies Plaintiffs' argument that there is no relationship between Count Three and Count One. Given their invocation of the ERISA breach of fiduciary duty claim in this manner, Plaintiffs' assertion that "the resolution of the breach of settlement agreement claim will not require the Court to interpret the parties' responsibilities under ERISA," *id.* at 17, cannot be credited. The Court in any event would be required to consider the ERISA claim in connection with adjudicating Count Three to determine whether there was any valid basis for the ERISA claim such that forbearance from asserting that claim could constitute consideration for the "settlement agreement" on which Count Three is based.

Plaintiffs' irreconcilable arguments notwithstanding, Count Three (as well as Count Two) are plainly subject to ERISA because they purport to concern agreements regarding the redemption of assets from funds governed by ERISA. Plaintiffs acknowledge that the terms of the alleged agreements involve the redemption of assets from collective funds that are part of a trust that is subject to ERISA by virtue of the Plan's investment of assets. Cmplt. ¶¶ 7-8, 20, 26. By definition, the interpretation of those alleged agreements implicates ERISA because the alleged "contracts" purport to specify the terms for redemption and withdrawal from ERISA-governed funds. The redemption of assets does not, of course, affect the Plan in a "tenuous,

14

remote, or peripheral manner," Mem. Opp. at 16, and Plaintiffs' entire argument against preemption therefore misses the mark completely. There can be no dispute that the redemption of assets affects a Plan directly and, accordingly, Plaintiffs' state law claim that the alleged "settlement agreement" allows it to redeem Plan assets from these ERISA funds is preempted.

### B. If The Court Does Not Dismiss It On Preemption Grounds, Count Three Should Be Dismissed As Duplicative of Count Two.

For the reasons stated in our initial Memorandum (at 12), if Count Three is not preempted, it should be dismissed as duplicative of Count Two. As discussed above, Plaintiffs concede in their Memorandum in Opposition that Count Two and Count Three are based on the exact same alleged agreements. See Mem. Opp. at 23 ("[T]he two claims . . . shar[e] supporting factual allegations."); *compare* Cmplt. ¶¶ 55-56 (of Count Two), *with id.* ¶ 61 (of Count Three). Plaintiffs' only argument in response is that the claims "are separate and distinct" because Count Three "is brought under Tennessee law" and Count Two "is brought under federal common law." Mem. Opp. at 22-23. But Plaintiffs cannot multiply their claims simply by asserting that the same alleged agreements should be governed by one law in Count Two and another law in Count Three. *See*, *e.g.*, *Aetna Cas. & Sur. Co. v. Dow Chem. Co.*, 883 F. Supp. 1101, 1109 (E.D. Mich. 1995) ("It . . . seems to us anomalous, in conflict-of-law terms, to suggest that more than one body of law will apply to a single contract." (citation omitted)); *accord Potomac Elec. Power Co. v. Cal. Union Ins. Co.*, 777 F. Supp. 968, 973 (D.D.C. 1991) (same). Accordingly, even if the Court concludes that Count Three is not preempted, it should dismiss Count Three as duplicative of Count Two. *See* Def. Mem. at 12 (citing *Collins v. Yellow Freight Sys., Inc.*, 93 Fed. Appx. 854, 863 (6th Cir. 2004) (affirming dismissal of duplicative claims), and *Williams v. Luttrell*, 2007 WL 3236662, *8 (W.D. Tenn. 2007) (dismissing duplicative constitutional claims based on same fact allegations)).

15

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Defendants' initial Memorandum, Counts Two and Three of the Complaint should be dismissed with prejudice.

> Respectfully submitted,
>
> s/Glen G. Reid, Jr.
> Glen G. Reid, Jr. (TN #8184)
> WYATT, TARRANT & COMBS, LLP
> 1715 Aaron Brenner Drive, Suite 800
> Memphis, TN  38120
> Telephone:  (901) 537-1000
> Fax:  (901) 5370-1010

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all counsel, via the Court's ECF system, this 30th day of March, 2009.

> s/Glen G. Reid, Jr.