IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

FEDEX CORPORATION and
FEDEEX CORPORATION EMPLOYEES'
PENSION PLAN,

      Plaintiffs,

v.                                 CASE No. 8-2827

THE NORTHERN TRUST COMPANY, and
NORTHERN TRUST INVESTMENTS, N.A.,

      Defendants.

---

ORDER DENYING DEFENDANTS' MOTION TO DISMISS
COUNTS TWO AND THREE OF THE COMPLAINT

---

Before the Court is the Motion to Dismiss Counts Two and Three of the Complaint of Defendants The Northern Trust Company ("NTC") and Northern Trust Investments, N.A. ("NTI") (collectively, "Defendants"). (D.E. #5.)   On March 5, 2009, Plaintiffs FedEx Corporation and FedEx Corporation Employees' Pension Plan (collectively, "Plaintiffs") filed a response to Defendants' motion. (D.E. #13.)  Defendants then filed a motion for leave to file a reply to Plaintiffs' response, which was granted.  Defendants then filed their reply on March 30, 2009.  (D.E. #17.)  For the reasons stated herein, the Court **DENIES** Defendants' motion.

## I. BACKGROUND[1]

FedEx Corporation ("FedEx"), a corporation organized under the laws of the state of Delaware with its principal place of business in Memphis, Tennessee, is the administrator of the FedEx Corporation Employees' Pension Plan ("Pension Plan") as defined in the Employee

---

[1] For purposes of this motion, the Court accepts as true the allegations contained in Plaintiffs' complaint.

Retirement Income Security Act of 1974 ("ERISA"). (Compl. ¶¶ 5, 6.)  On approximately May 10, 1982, FedEx entered into a trust agreement with NTC, an Illinois state banking corporation with its principal place of business in Chicago, Illinois. (Id. ¶¶ 7, 11.)  Under the agreement, FedEx established the FedEx Pension Trust as a funding medium for the Pension Plan, and NTC agreed to be the trustee and custodian of the assets of the FedEx Pension Trust.  (Id. ¶¶ 11.) Under the trust agreement, NTC is a fiduciary with respect to the Pension Plan and has the following duties and responsibilities:

> (1) the powers of the Trustee shall be exercisable for the exclusive purpose of providing benefits to the Participants and Beneficiaries under the Plan and in accordance with the standards of a prudent man under ERISA;
>
> (2) the Trustee shall diversify the investments of the portion of the Trust fund of which it has investment responsibility so as to minimize the risk of large losses;
>
> (3) the Trustee shall, with respect to that portion of the Trust Fund for which it has investment responsibility, follow the investment guidelines established by [FedEx] and shall act in accordance with the direction of [FedEx] given in exercise of [FedEx's] responsibility.

(Id. ¶¶ 12, 13.)  The trust agreement also specifies that NTC may lend Pension Plan assets only if it enters into a written agreement with FedEx that allows for securities lending. (Id. ¶ 14.)  The FedEx Corporation Retirement Plan Investment Board ("RPIB") was responsible for selecting investment managers for assets of the Pension Plan, transferring assets among separate accounts, and monitoring investments.  (Id. ¶ 15.)

Around May 2003, the RPIB asked NTC whether it had a fixed income index fund in which to invest Pension Plan assets, as the RPIB had just terminated one of the Pension Plan's investment managers. (Id. ¶¶ 16, 17.)  NTC advised the RPIB that it had the Bond Index Fund, which would meet the RPIB's needs for a safe fixed income index fund and which tracked the Lehman Brothers Long Term Government Bond Index.  (Id. ¶ 17.)

FedEx maintains that at the time of this recommendation and throughout the time at issue in this case, NTC was aware that FedEx objected to Pension Plan assets being involved in securities lending and that FedEx repeatedly made this objection clear. (Id. ¶¶ 18, 22, 27.) FedEx also notes that the RPIB never executed a written securities lending agreement authorizing Pension Plan assets to be loaned out. (Id. ¶ 23.) With this knowledge, NTC still recommended the Bond Index Fund, which was part of the Northern Trust Quantitative Management Collective Funds Trust ("Collective Trust"), despite the fact that it was engaged in securities lending. (Id. ¶ 18.) After the RPIB accepted NTC's recommendation on or about May 27, 2003, the RPIB requested that NTC transfer certain Pension Plan assets to the Bond Index Fund. (Id. ¶ 21.)

On or about December 29, 2006, the RPIB directed NTC to establish a "Separate Investment Account" and invest Pension Plan assets in the Russell Index Fund. (Id. ¶ 24.) The December 29th letter indicated that the Russell Index Fund could lend securities and appointed NTC as its securities lending agent. The letter also required NTC to redeem without penalty all Pension Plan assets from the Russell Index Fund within thirty days notice from the Pension Plan's fiduciaries. (Id. ¶ 25.) The Russell Index Fund was part of the Collective Trust, and thus NTI was the named fiduciary. (Id. ¶ 26) FedEx had no control over the investment process or over the investment decisions of NTI with regard to the Russell Index Fund. (Id.)

In making the recommendation of the Russell Index Fund, NTC represented that it would eliminate inordinately high risk stocks from the fund and that the Russell Index Fund would be rebalanced to minimize expected deviation between performance of the Fund and performance of the Russell 2000 Index. (Id. ¶ 27.) At no time did NTC discuss with the RPIB the extent of the Russell Index Fund's securities lending. (Id.)

In early September 2008, the RPIB decided to change its investment strategy and move away from the Bond Index Fund to a separately managed account. (Id. ¶ 28.)  In approximately mid-September 2008, the RPIB directed NTC to transfer all of the Pension Plan's assets from the Bond Index Fund to the new investment manager's account.  (Id. ¶ 29.)  NTC advised FedEx that it could not immediately transfer the assets because over 80% of the Pension Plan's assets in the Bond Index Fund were loaned out to borrowers and that the cash collateral held in return for the securities was held in a pool of securities called the Core USA Fund, which comprised riskier and largely more volatile funds.  (Id. ¶ 30.)

NTC informed FedEx that it had to sell the Core USA Fund securities to obtain cash to retrieve the loaned securities.  (Id. ¶ 31.)  The Core USA Fund securities, however, were not worth enough money to generate sufficient cash to recall the loaned securities. (Id.)  NTC, as a result, refused to immediately redeem the full value of the Pension Plan's assets in the Bond Index Fund.  (Id.)  At approximately the same time, NTC informed FedEx that a similar problem existed with the Russell Index Fund, where 50% of the Pension Trust's assets were loaned out to borrowers and the cash collateral was held in Core USA Fund securities, which was illiquid due to the financial crisis.  (Id. ¶ 32.)

On approximately September 19, 2008, NTC declared a collateral deficiency in the Core USA Fund.  (Id. ¶ 33.)  To remedy the deficiency, NTC booked a receivable to the Core USA Fund payable from each investor in the Collective Trust to restore the value of the Core USA Fund.  NTC reported to FedEx that the Pension Plan's assets lost $1 million in the Russell Index Fund and $8 million in the Bond Index Fund.  (Id. ¶ 34.)

After learning of these problems and deficiencies, FedEx demanded a complete withdraw of Pension Plan assets by NTC and NTI from both the Russell Index Fund and the Bond Index

Fund.  (<u>Id.</u> ¶ 36.)  In early October 2008, Defendants offered as a compromise to FedEx's demand for a complete withdrawal to fully redeem in cash or in kind all of the Pension Plan's assets from the Bond Index Fund in eight installments over an eight day period beginning in October 15, 2008.  (<u>Id.</u> ¶ 37, 55.)  FedEx accepted Defendants' offer.  (<u>Id.</u>)  Defendants and FedEx also reached a compromise that Defendants would fully redeem in cash or in kind all of the Pension Plan's assets from the Russell Fund Index in four installments over a four day period beginning on October 27, 2008.  (<u>Id.</u> ¶ 38, 56.)

To process the withdrawal, NTC prepared a direction letter for FedEx to sign and send back to NTC.  (<u>Id.</u> ¶ 39.)  On or about October 3, 2008, FedEx sent the signed direction letter to NTC instructing it to make the eight redemptions from the Bond Index Fund.  (<u>Id.</u>)  NTC acknowledged receipt and agreed to proceed.  (<u>Id.</u>)  On October 14, 2008, Defendants contacted FedEx and advised that they would not redeem the Pension Plan's assets. (<u>Id.</u> ¶ 40, 57.)  NTC offered an alternative option, which FedEx deemed unacceptable.  (<u>Id.</u> ¶¶ 40-42.)

FedEx claims that based on these actions, Defendants have breached their fiduciary duties to the Pension Plan under ERISA.  (<u>Id.</u> ¶¶ 43-52.)  FedEx also claims that the Pension Plan is entitled to relief under the federal common law of contracts for Defendants' failure to honor the compromise agreements to repay the Pension Plan's assets. (<u>Id.</u> ¶¶ 53-58.)  Finally, FedEx states that it is entitled to relief for Defendants' breach of the compromise agreements under Tennessee state common law.  (<u>Id.</u> ¶¶ 59-65.)

## II. STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may bring a motion to dismiss for failure to state a claim, which only tests whether the plaintiff has pleaded a cognizable claim.  <u>Scheid v. Fanny Farmer Candy Shops, Inc.</u>, 859 F.2d 434, 436 (6th Cir.

1988).  Essentially, it allows the court to dismiss, on the basis of a dispositive issue of law, meritless cases which would otherwise waste judicial resources and result in unnecessary discovery.  See, e.g., Nietzke v. Williams, 490 U.S. 319, 326-27 (1989).

To determine whether a motion to dismiss should be granted, the court must examine the complaint.  The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and it must provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Conley v. Gibson, 355 U.S. 41, 47 (1957); Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976).  While a complaint need not present detailed factual allegations, to be cognizable it must provide more than "labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Scheid, 859 F.2d at 436-37.  A complaint must have a factual foundation, and the mere possibility "that a plaintiff might later establish some set of undisclosed facts to support recovery" is insufficient to survive a 12(b)(6) challenge.  Twombly, 550 U.S. at 561 (internal quotation marks and brackets omitted).

In reviewing the complaint, the court must accept as true all factual allegations in the complaint and construe them in the light most favorable to the plaintiff.  Nietzke, 490 U.S. at 326-27 ("Rule 12(b)(6) does not countenance [] dismissals based on a judge's disbelief of a complaint's factual allegations."); Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir. 1983).  Where there are conflicting interpretations of the facts, they must be construed in the plaintiff's favor.  Sinay v. Lamson & Sessions Co., 948 F.2d 1037, 1039-40 (6th Cir. 1991).  However, only well-pleaded facts must be taken as true, and the court need not accept legal conclusions or unwarranted factual inferences.  Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389,

405 (6th Cir. 1998).  When a complaint does adequately state a claim, it may not be dismissed based on the court's "assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." Twombly, 550 U.S. at 563 n.8.

## III. LAW & ANALYSIS

In their memorandum in support of their motion to dismiss, Defendants argue that count two—the federal breach of contract claim—and count three—the state law breach of settlement agreement claim—of Plaintiffs' complaint should be dismissed because the contract at issue in both claims was not supported by consideration.  Defendants also contend that counts two and three should be dismissed against NTC because Plaintiffs only allege that NTI was a party to the contract or compromise at issue in those claims.  Finally, Defendants argue that count three should be dismissed because it is a state law claim that is either duplicative of count two or preempted under ERISA.  For the following reasons, Defendants motion to dismiss counts two and three is **DENIED**.

### A. Consideration

In its motion, Defendants first argue that Plaintiffs' claims for breach of contract and breach of the settlement agreement do not state cognizable claims because the compromise or agreement that is the basis for both claims is not alleged to be supported by consideration. Specifically, Defendants contend that FedEx's allegation that Defendants' failure to honor the compromise to redeem in cash or in kind all of the Pension Plan's assets that were invested in the Bond Index Fund and the Russell Index Fund cannot be the basis of a claim for breach of contract or the agreement because Plaintiffs' complaint provides only a conclusory allegation

that the compromise is supported by consideration and because Plaintiffs did not allege that they had the right to demand a complete and immediate withdrawal of assets.

A breach of contract claim has three elements: (1) the existence of an enforceable contract; (2) nonperformance of a party's obligations under the contract amounting to a breach of the contract; and (3) damages caused by the breach of contract. <u>Atria v. Vanderbilt Univ.</u>, 142 F. App'x 246, 254 (6th Cir. 2005) (citing <u>Life Care Ctrs. of Am., Inc. v. Charles Town Assocs.</u>, 79 F.3d 496, 514 (6th Cir. 1996)). An essential element of an enforceable contract, of course, is the existence of consideration. Consideration comes in many forms but generally is "either a benefit to the maker of the promise or a detriment to, or obligation upon, the promise[e]." <u>Wood v. Lowery</u>, 238 S.W.3d 747, 755-56 (Tenn. Ct. App. 2007) (quoting <u>Univ. of Chattanooga v. Stansberry</u>, 9 Tenn. App. 341, 343 (1928)). Consideration need not be a tangible or concrete item. <u>Wood</u>, 238 S.W.3d at 756. "Any benefit to one and detriment to the other may be sufficient consideration." <u>Id.</u> (quoting <u>Palmer v. Dehn</u>, 198 S.W.2d 827, 828 (Tenn. Ct. App. 1946)). Consideration also exists when a party "refrains from doing [that] which he has a legal right to do." <u>Id.</u>

In the present case, Plaintiffs allege that FedEx entered into a compromise with Defendants when Defendants agreed to return the Pension Plan's assets from the Bond Index Fund beginning on October 15, 2008 and the Pension Plan's assets from the Russell Index Fund beginning on October 27, 2008. (Compl. ¶¶ 37-38, 55-56.) FedEx states that it agreed to the return of those assets in installments instead of one lump sum transfer and that its agreement to Defendants' offers constituted a "compromise of claims between the parties." (<u>Id.</u> ¶¶ 55-56.)

Both accepting a delay in the payment of funds to which a party has an immediate right and agreeing not to pursue legal claims are sufficient to constitute consideration. Defendants

8

argue that FedEx had no right to the immediate and complete withdrawal of the Pension Plan's assets from the Funds and that Plaintiffs failed to allege any such right. The Court first notes that the actual existence of this right is not a question properly addressed in a motion to dismiss but would instead require the Court to look outside the pleadings. Second, despite Defendants' assertion that Plaintiffs fail to allege that they had a right to immediately demand withdrawal of assets, the Court finds that such a right is implicitly included in Plaintiffs' complaint. Specifically, the statement that FedEx and Defendants agreed to resolve their dispute, which included Defendants' refusal to redeem Plaintiffs' assets, with FedEx agreeing "to a return [of its assets] in eight installments" implicitly includes the allegation that FedEx had an immediate right to those funds. Plaintiffs could have drafted a clearer complaint, but the "short and plain" pleading standard of Rule 8 of the Federal Rules of Civil Procedure does not require such specificity. <u>See</u> Fed. R. Civ. P. 8(a)(2). Instead, it only requires enough facts to state a claim that is plausible on the face of the complaint. <u>Twombly</u>, 550 U.S. at 570. The Court finds that Plaintiffs' complaint sufficiently alleges the elements of a contract and a breach of contract claim to satisfy this standard.

Even if Plaintiffs' complaint did not sufficiently allege that FedEx had a right to a complete and immediate withdraw of assets, the Court finds that based on the complaint the compromise agreement is supported by consideration because FedEx agreed to refrain from taking legal action. An agreement to forbear pursuit of a legal claim is valid consideration. <u>Johnson v. Cent. Nat'l Ins. Co.</u>, 356 S.W.2d 277, 282 (Tenn. 1962); <u>DeBord v. Brown</u>, 217 S.W.2d 772, 774 (Tenn. 1948). Plaintiffs' complaint alleges that the agreement was a "compromise of claims" between Defendants and FedEx. (Compl. ¶¶ 55-56.) The Court thus finds that Plaintiffs' agreement to delay or refrain from filing a lawsuit is sufficient consideration

to support a valid contract.  Accordingly, Defendants' attempt to have counts two and three dismissed based on a lack of consideration is denied.

**B. NTC**

The Court next turns to Defendants' second argument.  Defendants argue that even if consideration exists, counts two and three should be dismissed against NTC because the complaint only alleges that NTI entered into the "compromise" agreements and that NTI breached those agreements.  In response, Plaintiffs explain that it was at times unclear whether they were dealing with NTI or NTC, but that the complaint sufficiently alleges that FedEx entered into the compromise agreements with both Defendants and that both NTI and NTC breached the agreements.

After examining the complaint, the Court finds that the complaint adequately alleges that both NTI and NTC were parties to the compromise agreement and that both allegedly breached the compromise.  In paragraphs thirty-seven (37) and thirty-eight (38) of the complaint, Plaintiffs allege that NTI and FedEx reached compromises on the redemption of assets from the Bond Index Fund and the Russell Index Fund.  (Compl. ¶¶ 37-38.)  Plaintiffs allege that NTC prepared a direction letter and sent it to FedEx to sign and return.  (Id. ¶ 39.)  The complaint then states that NTC contacted FedEx on October 14, 2008 and advised that "it would not honor its agreement to redeem the Plan's assets in the manner to which it had agreed."  (Id. ¶ 40.)

Following these allegations, in the section headed "Count Two," Plaintiffs incorporate the earlier allegations but contend that NTC and FedEx agreed to resolve and compromise the dispute between them as follows: NTC agreed to fully redeem in kind or in cash all of the Plan's assets . . . ."  (Id. ¶ 55.)  Plaintiffs also state that FedEx and NTC agreed that NTI would return all Pension Plan assets from the Russell Index Fund and that "NTI subsequently breached

agreements between the parties." (Id. ¶¶ 56-57.)  When read with the earlier incorporated factual allegations, the Court finds that FedEx has alleged that the compromise was entered into with both NTC and NTI (Id. ¶¶ 37-38, 55-56) and that both NTI and NTC breached the compromise (Id. ¶¶ 40, 57).  Accordingly, the Court finds that Defendants' motion to dismiss counts two and three against NTC is denied because Plaintiffs have alleged that both NTC and NTI entered into a compromise agreement with FedEx and then breached that agreement.

### C. ERISA Preemption and Duplicative Claims

Defendants next argue that count three—breach of the settlement agreement—should be dismissed because, as a state law claim, it is preempted by ERISA.  Additionally, Defendants contend that even if it is not a state law claim and thus preempted by ERISA, it should be dismissed because it is duplicative of Plaintiffs' count two—the breach of contract claim.

ERISA supersedes all state laws to the extent that they "may now or hereafter relate to any employee benefit plan" governed by ERISA's terms.  29 U.S.C. § 1144(a).  The actual scope of ERISA preemption has been a continual subject of dispute.  See Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp., 399 F.3d 692, 697 (6th Cir. 2005) (noting that U.S. Supreme Court has addressed the ERISA preemption issue "approximately twenty times over the last twenty-four years").  Despite the statute's extremely broad language, the Supreme Court and other appellate courts have found that there are exceptions to the general rule of ERISA preemption.  For example, state actions that affect employee benefit plans in only a "tenuous, remote, or peripheral" manner do not warrant preemption.  Shaw v. Delta Air Lines, 463 U.S. 85, 100 n.21 (1983).   Further, the Sixth Circuit Court of Appeals has identified three areas of state law that are preempted by ERISA—laws that "(1) mandate employee benefit structures or their administration; (2) provide alternative enforcement mechanisms; or (3) bind employers or plan

administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself." Id. (quoting Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1468 (4th Cir. 1996)) (internal quotations omitted).

In the present case, these three areas that would warrant ERISA preemption are not implicated by the facts. The issue before the Court concerning Plaintiffs' state law claim is whether Defendants breached a settlement agreement that was allegedly designed to avoid Plaintiffs' filing a cause of action for breach of fiduciary duty. Although the breach of fiduciary duty claim under ERISA led to the dispute between the parties, the claim for breach of the settlement agreement neither implicates ERISA nor requires an interpretation or reading of the ERISA plan. Plaintiffs' rights and Defendants' legal duties in regards to the breach of settlement agreement claim arose independent of the ERISA plan and the claim for breach of fiduciary duty. Cf. Aetna Health, Inc. v. Davila, 542 U.S. 200, 214 (2004) (holding that preemption of state law claim was proper because legal duties did not arise independent of ERISA plan). Because the state law claim for breach of the settlement agreement is only tenuously related to Plaintiffs' ERISA claim and because the parties' rights and obligations concerning this claim arose independent of the ERISA plan, the Court finds that Plaintiffs' state law claim for breach of the settlement agreement is not preempted by ERISA.

Defendants also raise the argument that the breach of settlement agreement claim is duplicative of the federal breach of contract claim alleged in count two. As this contention was an alternative argument that assumed Plaintiffs' breach of settlement agreement claim might be a federal common law claim, the Court finds that this argument is without merit.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss counts two and three of

Plaintiffs' complaint is **DENIED**.

**IT IS SO ORDERED** this 20th day of May, 2009.

s/Bernice B. Donald
BERNICE BOUIE DONALD
UNITED STATES DISTRICT COURT JUDGE
