**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **FEDEX CORPORATION,** | ) | |
| **FEDEX CORPORATION** | ) | |
| **EMPLOYEES' PENSION PLAN,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2:08-CV-2827** |
| | ) | |
| **THE NORTHERN TRUST COMPANY,** | ) | **Hon. Bernice B. Donald** |
| **and NORTHERN TRUST** | ) | |
| **INVESTMENTS, N.A.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ANSWER, DEFENSES AND COUNTERCLAIMS OF DEFENDANTS
NORTHERN TRUST INVESTMENTS, N.A.
AND THE NORTHERN TRUST COMPANY**

Defendants Northern Trust Investments, N.A. ("NTI") and The Northern Trust Company ("NTC"), by their attorneys and pursuant to Federal Rules of Civil Procedure 8, submit their Answer and Affirmative Defenses to the Complaint filed by Plaintiffs FedEx Corporation ("FedEx") and the FedEx Corporation Employees' Pension Plan ("Plan").[1]  Pursuant to Federal Rule of Civil Procedure 7, Defendants also submit their counterclaims against FedEx and the FedEx Retirement Plan Investment Board ("RPIB").  Unless otherwise stated, and solely for convenience, the Answer, Affirmative Defenses, and Counterclaims set forth herein employ the defined terms set forth in the Complaint; no agreement or waiver by such use is intended.

---

[1] No answer is required with respect to the headings, prayers for relief, and other contents of the Complaint that do not set forth allegations of fact and are not included within numbered paragraphs as required by Fed. R. Civ. P. 10(b).

## ANSWER

1.      NTC and NTI admit that (1) FedEx is the Administrator of the Plan and (2) the Plaintiffs purport to bring an action for breach of fiduciary duty under ERISA and breach of the federal common law of contract.  NTC and NTI deny that they breached any fiduciary duty owed to the Plan or any contract or other agreement with the Plan and deny any remaining allegations in Paragraph 1.

2.      NTC and NTI admit that NTC is the directed trustee for the FedEx Corporation Employees' Pension Trust, which contains the assets of the Plan, and that FedEx authorized and directed the investment of certain Plan assets in two collective investment funds of NTI that engaged in securities lending.  NTC and NTI deny the remaining allegations of Paragraph 2.

3.      NTC and NTI deny the allegations of Paragraph 3.

4.      NTC and NTI admit that the Plaintiffs purport to seek monetary damages or injunctive relief in this Action.  NTC and NTI deny that they breached any fiduciary duty owed to the Plan or any contract or other agreement with the Plan and deny any remaining allegations in Paragraph 4.

5.      Upon information and belief, NTC and NTI admit that:  (1) FedEx Corporation is a corporation organized and existing under the laws of the state of Delaware; (2) its principal place of business is located in Memphis, Tennessee; and (3) FedEx is the Plan Administrator of the Plan and a fiduciary to the Plan.  NTC and NTI deny any remaining allegations of Paragraph 5.

6.      Upon information and belief, NTC and NTI admit the allegations of the first and third sentences of Paragraph 6.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of Paragraph 6.  The last sentence of Paragraph 6 sets forth legal conclusions to which no answer is required.  NTC and NTI deny

that they owe any relief or damages to the Plan and deny any remaining allegations in Paragraph 6.

7.     NTC and NTI admit that NTC is an Illinois state banking corporation with its principal place of business in Chicago, Illinois, and is the directed trustee of the FedEx Employees' Pension Trust.  NTC and NTI further admit that NTC is the securities lending agent appointed by NTI in its capacity as Trustee of the Northern Trust Global Investments Collective Funds Trust ("NTGI Collective Funds Trust") under a securities lending authorization agreement entered into by NTC and NTI (as trustee).  Paragraph 7 otherwise states legal conclusions to which no answer is required.  Defendants deny any remaining allegations in Paragraph 7.

8.     NTC and NTI admit that NTI is an affiliate of NTC and that NTI is a national banking association with its principal place of business in Chicago, Illinois.  NTC and NTI further admit that NTI is the trustee for the NTGI-QM Collective Daily Long-Term Government Bond Index Fund-Lending (the "Long-Term Bond Index Lending Fund") and the NTGI-QM Collective Daily Russell 2000 Index Fund - Lending (the "Russell 2000 Index Lending Fund") and manages those funds.  The third sentence of Paragraph 8 refers to the contents of a document, which speaks for itself, and NTC and NTI deny any allegations inconsistent therewith.  NTC and NTI deny any remaining allegations in Paragraph 8.

9.     Paragraph 9 states legal conclusions to which no answer is required.  NTC and NTI admit that they periodically conduct business in this district.  NTC and NTI deny any remaining allegations in Paragraph 9.

10.    Paragraph 10 states legal conclusions to which no answer is required.  NTC and NTI admit, on information and belief, that the Plan Administrator is based in this district and that

administrative activities relating to the Plan occur within this district.  NTC and NTI deny any remaining allegations in Paragraph 10.

11.     NTC and NTI admit the allegations of the first and third sentences of Paragraph 11.  NTC and NTI state further that the second sentence refers to the terms of the Trust Agreement, which speaks for itself, and deny any allegations inconsistent therewith.  NTC and NTI deny any remaining allegations in Paragraph 11.

12.     NTC and NTI state that Paragraph 12 refers only to the terms of the Trust Agreement, which speaks for itself, and deny any allegations inconsistent therewith.  NTC and NTI deny any remaining allegations in Paragraph 12.

13.     NTC and NTI state that Paragraph 13 refers only to the terms of the Trust Agreement, which speaks for itself, and deny any allegations inconsistent therewith.  NTC and NTI deny any remaining allegations in Paragraph 13.

14.     NTC and NTI state that Paragraph 14 refers only to the terms of the Trust Agreement, which speaks for itself, and deny any allegations inconsistent therewith.  NTC and NTI deny any remaining allegations in Paragraph 14.

15.     NTC and NTI admit that the RPIB was ultimately responsible for, among other things, selecting investment managers for assets of the Plan, transferring assets among separate accounts, and monitoring the investments of the Plan.  On information and belief, NTC and NTI further admit that the RPIB presently consists of seven FedEx Corporation employees.  NTC and NTI deny any remaining allegations in Paragraph 15.

16.     NTC and NTI lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 16.

17.     NTC and NTI admit that the primary objective of the Long-Term Bond Index Lending Fund is to hold a portfolio representative of the long-term government securities sector of the United States bond and debt market, as characterized by the Lehman Brothers Long Term Government Bond Index (now known as the Barclay's Capital Long-Term Government Bond Index).  NTC and NTI deny any remaining allegations in Paragraph 17.

18.     NTC and NTI admit that prior to and during 1995, the FedEx Employees' Pension Trust participated in direct securities lending and that it subsequently ceased its participation in that direct securities lending program during 1995.  NTC and NTI deny the remaining allegations of Paragraph 18.

19.     NTC and NTI admit that the primary objective of the Long-Term Bond Index Lending Fund is to hold a portfolio representative of the long term government securities sector of the United States bond and debt market, as characterized by the Lehman Brothers Long Term Government Bond Index (now known as the Barclay's Capital Long-Term Government Bond Index).  NTC and NTI further admit that, prior to the Plan's investment in the Long-Term Bond Index Lending Fund, FedEx was provided with a written description of the fund that disclosed that the Fund was authorized to engage in securities lending and that FedEx authorized the investment of Plan assets in this lending fund and directed NTC to invest Plan assets in the fund. NTC and NTI deny the remaining allegations of Paragraph 19.

20.     NTC and NTI admit that the Long-Term Bond Index Lending Fund is a fund established and maintained as part of the NTGI Collective Funds Trust.  NTC and NTI admit the allegations of the third sentence of Paragraph 20, and that subject to and consistent with the terms of the Declaration of Trust for the NTGI Collective Funds Trust ("Declaration of Trust"), NTI had sole investment discretion as to how to invest assets of the Funds within the NTGI

Collective Funds Trust, including the Long-Term Bond Index Lending Fund.  NTC and NTI deny any remaining allegations in Paragraph 20.

21.     NTC and NTI admit that on or about May 27, 2003, FedEx directed NTC to effect a withdrawal of funds invested in the NTQA Aggregate Bond Index Fund, a Fund within the NTGI Collective Funds Trust that engaged in securities lending, and to invest those proceeds in the Long-Term Bond Index Lending Fund (which at that time was called the NTQA Collective Daily Long-Term Government Bond Index Fund).  NTC and NTI deny any remaining allegations in Paragraph 21.

22.     NTC and NTI admit that members of the RPIB and certain employees of NTC engaged in discussions during the Spring of 2004 as to whether FedEx wished to participate in NTC's direct securities lending program (which is a program distinct from investments in collective index funds that, in turn, engage in securities lending) and that, at the conclusion of those discussions, FedEx chose not to participate in the direct securities lending program and told NTC that certain members of the RPIB believed that the earnings anticipated from participation in the direct lending program would not be sufficient to offset the risks of participation.  NTC and NTI deny the remaining allegations in Paragraph 22.

23.     NTC and NTI deny the allegations of Paragraph 23.  NTC and NTI further state that FedEx authorized in writing the investment of Pension Trust assets in various NTI collective funds that they knew engaged in securities lending.

24.     NTC and NTI admit that FedEx, through the RPIB, directed NTC to establish a separate investment account under the Trust and to invest the Plan assets in that account in the Russell 2000 Index Lending Fund.  NTC and NTI deny any remaining allegations in Paragraph 24.

25.     NTC and NTI admit that Attachment A is an accurate copy of the December 29, 2006 direction letter.  NTC and NTI state further that the first two sentences of Paragraph 25 refer to the terms of the letter, which speaks for itself, and deny any allegations inconsistent therewith.  NTC and NTI state further that FedEx knew and understood that the Russell 2000 Index Lending Fund engaged in securities lending.  NTC and NTI deny any remaining allegations of Paragraph 25.

26.     NTC and NTI admit that the Russell 2000 Index Lending Fund was a fund within the NTGI Collective Funds Trust (of which NTI was the trustee) and, subject to and consistent with the terms of the Declaration of Trust, had sole investment discretion as to how to invest assets of the Russell 2000 Index Lending Fund.  The second sentence of Paragraph 26 sets forth legal conclusions as to which no answer is required.  NTC and NTI deny any remaining allegations in Paragraph 26.

27.     NTC and NTI admit that prior to FedEx's investment of Plan assets in the Russell 2000 Index Lending Fund, NTC advised FedEx, among other things, that the fund's investment objective is to provide investment results that approximate the overall performance of the common stocks included in the Russell 2000 Index and that it may eliminate from the fund any stock which it at any time deems to have an inordinately high degree of credit risk.  NTC also represented that the Russell 2000 Index Lending Fund would be rebalanced from time to time in order to minimize the expected or predicted deviation between the performance of the fund and the performance of the Russell 2000 Index or to reflect changes in the composition of the Russell 2000 Index.  NTC and NTI deny the remaining allegations in Paragraph 27.

28.     NTC and NTI admit that at some point after September 21, 2008, FedEx personnel told advised NTC that FedEx wanted to transfer the assets invested in the Long-Term

Bond Index Lending Fund to a separately-managed account to fund a new investment program. NTC and NTI lack sufficient knowledge or information to form a belief about the truth of the remaining allegations in Paragraph 28.

29.     NTC and NTI admit that at some point after September 21, 2008, certain FedEx personnel told NTC that FedEx wanted to transfer the Plan assets invested in the Long-Term Bond Index Lending Fund to a new account to be managed by an investment manager.  NTC and NTI deny any remaining allegations of Paragraph 29.

30.     NTC and NTI admit that cash collateral for the Long-Term Bond Index Lending Fund is invested in assets held in Core USA and managed by NTI.  NTC and NTI deny the remaining allegations in Paragraph 30.

31.     NTC and NTI admit that they advised FedEx, among other things, that due to the unprecedented market conditions then prevailing, a withdrawal of the FedEx Employees' Pension Trust investment in the Long-Term Bond Index Lending Fund would include a distribution of its pro rata share of assets invested in Core USA and that such assets would probably not yield their full book value if sold immediately.  NTC and NTI deny the remaining allegations of Paragraph 31.

32.     NTC and NTI admit that the unprecedented financial crisis has affected the Russell 2000 Index Lending Fund and the Long-Term Bond Index Lending Fund in a similar manner and that cash collateral of the Russell 2000 Index Lending Fund is also invested in Core USA.  NTC and NTI deny any remaining allegations in Paragraph 32.

33.     NTC and NTI admit that on or about September 19, 2008, NTC declared a collateral deficiency in Core USA under the terms of the Securities Lending Authorization Agreement dated August 1, 2006, because the market value of certain assets had declined and

put a strain on the market value-to-book value ratio of Core USA.  NTC and NTI deny any remaining allegations in Paragraph 33.

33.     34.     NTC and NTI admit that certain collective funds engaged in securities lending debited a payable for their proportionate share of the declared collateral deficiency, as a result of which (i) the reduced value of the Plan's investment in the Russell 2000 Index Lending Fund was approximately $1 million, and (ii) the reduced value of the Plan's investment in the Long-Term Bond Index Lending Fund was approximately $8 million.  NTC and NTI deny the remaining allegations in Paragraph 34.

35.     NTC and NTI deny that they failed to provide information to FedEx concerning the level of securities lending in the Long-Term Bond Index Lending Fund or the Russell 2000 Index Lending Fund, and state further that NTI provided plaintiffs with, among other things, annual reports regarding the performance of the collective funds that included information about the level of securities lending in each fund.  NTC and NTI deny that collateral obtained for the loaned securities was invested in securities with a higher aggregate risk than the loaned securities, deny that the extent of securities lending in the index funds held under the NTGI Collective Funds Trust would cause such funds to diverge substantially from the performance and risk profile of their benchmark indexes, and deny any remaining allegations in Paragraph 35.

36.     NTC and NTI admit that FedEx did not request the withdrawal of any Plan assets in any form from the collective funds until after it had been notified of the collateral deficiency. NTC and NTI deny the remaining allegations of Paragraph 36.

37.     NTC and NTI deny the allegations of Paragraph 37.

38.     NTC and NTI deny the allegations of Paragraph 38.

39.     NTC and NTI admit that FedEx was provided with a sample direction letter for use in requesting withdrawal of the Plan's investment in the Long-Term Bond Index Lending Fund and that on or about October 3, 2008, FedEx sent a direction letter (an accurate copy of which is included as Exhibit B of the Complaint) to NTC.  NTC and NTI further admit that Exhibit C is an accurate copy of an email sent by an employee of NTC to FedEx.  Defendants state further that the direction letter and email speak for themselves and deny any allegations inconsistent therewith.  NTC and NTI deny any remaining allegations in Paragraph 39.

40.     NTC and NTI deny the allegations in the first sentence of Paragraph 40.  NTC and NTI admit that on or about October 14, 2008, FedEx was advised, in substance, that to effect a complete withdrawal of the Plan's assets from the collective funds, the Plan's pro rata share of each fund's loaned securities would have to be recalled and that Core USA assets would be liquidated in partial repayment of the borrower(s), with any remaining balance owed to the borrower(s) to be deducted from the redemption proceeds.  FedEx was further advised, in substance, that as part of the redemption proceeds, the Plan would receive its pro-rata share of the in-kind securities of Core USA.  NTC and NTI deny any remaining allegations in Paragraph 40.

41.     NTC and NTI deny the allegations of Paragraph 41.

42.     NTC and NTI deny the allegations of Paragraph 42.

43.     NTC and NTI incorporate their answers to Paragraphs 1 through 42 as if fully set forth herein.

44.     Paragraph 44 states legal conclusions as to which no answer is required.  NTC and NTI deny any fact allegations that may be stated in Paragraph 44.

45.     Paragraph 45 states legal conclusions as to which no answer is required. Defendants state further that the terms of the referenced statute speak for themselves and deny any allegations inconsistent therewith.  NTC and NTI deny any fact allegations that may be stated in Paragraph 45.

46.     NTC and NTI deny the allegations of Paragraph 46.

47.     Paragraph 47 states legal conclusions as to which no answer is required. Defendants state further that the terms of the referenced statute speak for themselves and deny any allegations inconsistent therewith.  NTC and NTI deny any allegations that may be stated in Paragraph 47.

48.     NTC and NTI state that the terms of the Trust Agreement speak for themselves and deny any allegations inconsistent therewith.  NTC and NTI deny any remaining allegations of Paragraph 48.

49.     NTC and NTI deny the allegations of Paragraph 49.

50.     Paragraph 50 states legal conclusions to which no answer is required.  Defendants state further that the terms of the referenced statute speak for themselves and deny any allegations inconsistent therewith.  NTC and NTI deny any remaining allegations in Paragraph 50.

51.     Paragraph 51 states legal conclusions to which no answer is required.  Defendants state further that the terms of the referenced statute speak for themselves and deny any allegations inconsistent therewith.  NTC and NTI deny any remaining allegations in Paragraph 51.

52.     NTC and NTI admit that FedEx is a fiduciary to the Plan.  Defendants deny that they breached any duty owed to the Plan and deny any remaining allegations in Paragraph 52.

53.     NTC and NTI incorporate their answers to Paragraphs 1 through 52 as if fully set forth herein.

54.     Paragraph 54 states legal conclusions to which no answer is required.  NTC and NTI deny any fact allegations that may be stated in Paragraph 54.

55.     NTC and NTI deny the allegations in Paragraph 55.

56.     NTC and NTI deny the allegations in Paragraph 56.

57.     NTC and NTI deny the allegations in Paragraph 57.

58.     NTC and NTI deny that they breached any duty owed to the Plan or FedEx and deny any remaining allegations in Paragraph 58.

59.     NTC and NTI incorporate their answers to Paragraphs 1 through 58 as if fully set forth herein.

60.     NTC and NTI deny the allegations of Paragraph 60.

61.     NTC and NTI deny that they entered into any settlement agreement with FedEx and/or the Plan and deny any remaining allegations in Paragraph 61.

62.     NTC and NTI deny the allegations in Paragraph 62.

63.     NTC and NTI deny that they entered into any settlement agreement with FedEx and/or the Plan and deny any remaining allegations in Paragraph 63.

64.     NTC and NTI deny that they entered into any settlement agreement with FedEx and/or the Plan and deny any remaining allegations in Paragraph 64.

65.     NTC and NTI deny that they entered into any settlement agreement with FedEx and/or the Plan and deny any remaining allegations in Paragraph 65.

## **AFFIRMATIVE DEFENSES**

NTC and NTI allege the following affirmative defenses with respect to the claims alleged in the Amended Complaint without assuming the burden of proof where the burden of proof rests upon the Plaintiffs.

1.      The Complaint fails to state a claim upon which relief may be granted.

2.      Counts Two and Three of the Complaint fail to state a claim upon which relief may be granted for the reasons set forth in the motion to dismiss those counts filed by NTC and NTI.

3.      Plaintiffs' non-ERISA claims are preempted under ERISA and should be dismissed from this action.

4.      NTC and NTI at all times acted reasonably and prudently and fulfilled all of their legal and other duties.

5.      Plaintiffs were not authorized to, and did not, rely on NTC and NTI in making investment decisions or in taking any action referenced in this Complaint.

6.      The Plan has sustained no damages.

7.      No act or omission of NTC and NTI caused the Plan to sustain any injury.

8.      If the Plan sustained any injury—which NTC and NTI specifically deny—any such injury was due, in whole or in part, to actions and/or omissions by FedEx and the RPIB.

9.      If the Plan sustained any damages—which NTC and NTI specifically deny—then the Plaintiffs failed to mitigate such damages and their claim for damages should be barred or reduced accordingly.

10.      If NTC or NTI violated fiduciary or other duties to the Plan—which NTC and NTI specifically deny—then FedEx and the RPIB also violated fiduciary and other duties to the Plan and are liable for their share of any Plan losses caused by their misconduct.

11.     If NTC and NTI violated fiduciary or other duties to the Plan—which NTC and NTI specifically deny—then FedEx and the RPIB also violated fiduciary and other duties to the Plan and, since the violations by FedEx and the RPIB were active and greater in severity and scope than any such violations by NTC and NTI, FedEx is liable for all of the Plan's alleged losses.

12.     NTI is not liable to the Plaintiffs by virtue of the operation of Articles 2.03, 3.02, and 5.02 of the Declaration of Trust.

13.     NTC is not liable to the Plaintiffs by virtue of the operation of Section 9.6 of the Pension Trust Agreement.

14.     If the alleged agreements described in Counts Two and Three of the Complaint were made—which NTC and NTI specifically deny—then they are unenforceable because they would constitute prohibited transactions under ERISA § 406, 29 U.S.C. § 1106.

15.     Plaintiffs ratified the allegedly improper or unlawful acts of NTC and NTI alleged in the Complaint.

16.     Plaintiffs acquiesced in the allegedly improper or unlawful acts of NTC and NTI alleged in the Complaint.

17.     Plaintiffs assumed the risk of the allegedly improper or unlawful acts of NTC and NTI alleged in the Complaint.

18.     Plaintiffs are estopped from seeking or obtaining any relief due to the allegedly improper or unlawful acts of NTC and NTI alleged in the Complaint.

19.     Plaintiffs have waived seeking or obtaining any relief due to the allegedly improper or unlawful acts of NTC and NTI alleged in the Complaint.

20.     Plaintiffs' claims are barred, in whole or part, by the statute of limitations.

21.     Plaintiffs' claims are barred, in whole or part, by the doctrine of laches.

22.     Plaintiffs' own unclean hands prevent them from obtaining any relief from NTC and NTI on the Plan's behalf.

23.     Plaintiffs' own "in pari delicto" conduct prevents them from obtaining any relief from NTC and NTI on Plan's behalf.

## COUNTERCLAIMS[2]

Defendants/Counterclaim-plaintiffs The Northern Trust Company ("NTC") and Northern Trust Investments, N.A. ("NTI") bring the following counterclaims for Contribution and Indemnification against Plaintiffs/Counterclaim-defendants FedEx Corporation ("FedEx") and Counterclaim-defendant FedEx Corporation Retirement Plan Investment Board ("RPIB").[3]

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over these counterclaims under both 28 U.S.C. § 1331 and §502(e)(1)-(2) of ERISA, 29 U.S. C. § 1132(e)(1)-(2).

2.     Venue over these counterclaims is proper in the Western District of Tennessee because a substantial number of the Counterclaim-defendants' actions giving rise to the counterclaims asserted herein occurred in this district.

## FACTUAL BACKGROUND

### FedEx and the RPIB Are Responsible for the Investment of Plan Assets.

3.     FedEx created and maintains the Plan for the benefit of its employees, retirees, and their beneficiaries.

---

[2] Unless otherwise indicated, terms defined in the Complaint have the same meaning in this Counterclaim.

[3] The RPIB is not a Plaintiff in this Action.  The RPIB is joined as a party to this counterclaim pursuant to Federal Rules of Civil Procedure 13(h), 19 and 20.  "RPIB" refers to the present Committee and any predecessors.

4.      FedEx is the Administrator of the Plan.

5.      FedEx is the named Fiduciary of the Plan for Plan administration and Plan

investments.

6.      FedEx has overall authority and control over the investment of Plan assets (also

known as the "Trust Fund"), which it exercises largely through the activities of the RPIB.

7.      FedEx maintains the RPIB and appoints its members.  All members of the RPIB are

officers and/or employees of FedEx.

8.      The RPIB is ultimately responsible for allocating Plan assets among "Separate

Accounts" and for selecting Investment Managers or Investment Fiduciaries for those accounts.

The RPIB's overall authority and control over the investment of Plan assets also requires the

RPIB to determine appropriate investment guidelines and limitations applicable to each such

Investment Manager and Fiduciary and to monitor the continued appropriateness of the

allocation of Plan assets among such Investment Managers and Investment Fiduciaries in light of

the current needs of the Plan.

9.      The RPIB has investment responsibility for any assets of the Plan not otherwise

allocated to a Separate Account and for assets held in any Separate Account for which an

Investment Manager or an Investment Fiduciary has not been retained, has been removed, or is

for any reason unwilling or unable to act.  The RPIB also has the discretion to name itself as the

Investment Manager or Investment Fiduciary of any Separate Account.

10.      The RPIB is also responsible for monitoring the investments of the Plan, including

the diversification of Plan assets, the risks posed by the investments, and the performance of the

investments.

**NTC Had No Authority or Responsibility for the Investment of Plan Assets.**

11.      NTC is the directed Trustee of the Plan.

12.     Under ERISA, a person is a fiduciary only to the extent that person has fiduciary authority.  ERISA § 3(21), 29 U.S.C. §1002(21).

13.     With respect to the investment of Plan assets, NTC was required to act at the direction of the RPIB and any duly-appointed Investment Managers or Investment Fiduciaries.  NTC did not have any discretionary investment authority or responsibility with respect to any investment of Plan assets.  The Pension Trust Agreement stated, in part, that NTC "shall not make any investment review of, consider the propriety of holding or selling, or vote other than as directed by the Investment Manager or Investment Fiduciary, any assets of the Trust Fund allocated to a Separate Investment Account."

14.     NTC did not have any authority or responsibility to provide advice to FedEx or the RPIB regarding the investment of Plan assets.

15.     NTC did not have any authority or responsibility to make any investment review of, or to consider the propriety of holding or selling, any assets of the Plan, except as related to the short term investment of cash, absent contrary instruction from the Investment Manager or Investment Fiduciary thereof.

16.     NTC was not an investment fiduciary with respect to the Plan.

### FedEx and the RPIB Authorized and Directed the Investments of Plan Assets in the NTI Lending Index Funds.

17.     Since at least June 1995, FedEx—through the RPIB—has authorized and directed NTC to invest a portion of the Plan assets in collective funds that engage in securities lending.

18.     NTC was authorized by § 4.1(c) and § 4.3 of the Pension Trust Agreement to follow the directions of the RPIB to cause any part or all of the Plan assets to be commingled or collectively invested with the assets of trusts created by others by causing the Plan assets to be invested as part of the funds created by any such commingled or collective or group trusts.

19.     The table below lists the securities lending collective funds managed by NTI

("Lending Index Funds") in which FedEx, through the RPIB, has invested some portion of the

Plan assets since 1995 (all numbers in '000's):

| Approximate Investment Begin Date | Approximate Investment End Date | Investment Manager or Investment Fiduciary | Name of Fund | Approximate Value at Withdrawal or as of 9/30/08 |
|---|---|---|---|---|
| June 1995 | November 2005 | FedEx | NTQA Collective Daily Aggregate Bond Index Fund | $26,765 |
| January 1999 | July 2003 | FedEx | NTQA Collective Daily S&P 400 Mid Cap Index Fund | $114,383 |
| May 2003 | | FedEx | NTGI-QM Collective Daily Long-Term Government Bond Index Fund – Lending (fka NTQA Long-Term Government Bond Index Fund) | $221,415 |
| January 2007 | | FedEx | NTGI-QM Collective Daily Russell 2000 Index Fund – Lending | $800,757 |

20.     In addition, on information and belief, FedEx, through the RPIB, has authorized and

directed the investment of Plan assets in securities lending collective funds that were not

managed by NTI.

21.     Each of the Lending Index Funds is a "collective fund" in which dozens or even

hundreds of other employee and retiree pension and savings plans (many established under

ERISA), among other investors, invest in each of the Lending Index Funds.  Each of such funds

is a "Collective Fund" that is governed by the Amendment and Restatement of Declaration of

Trust of the Northern Trust Global Investments Quantitative Management Collective Funds

Trust, dated January 31, 2006 ("Declaration of Trust"), pursuant to which NTI is the trustee of

each such Collective Fund.  Among other things, such investors are bound by the Declaration of

Trust as a condition of their investment.  Provisions of the Declaration of Trust control and supersede any contrary or inconsistent provisions in the Pension Trust Agreement.

22.    The Pension Trust Agreement also expressly incorporates the terms and conditions of the Declaration of Trust and provides that the terms of the Declaration of Trust shall prevail over any contrary provision of the Pension Trust Agreement.

23.    Participating Trusts do not own any of the individual securities held by the Lending Index Funds or any other fund included within the Collective Funds Trust.  Instead they own undivided interests in any fund in which they have invested.  These interests are called "Units." FedEx invested in, and the Plan assets include, "Units" in the Lending Index Funds.

24.    Participating Trusts in any of the funds included within the Collective Funds Trust must share fund gains and losses proportionately with the other Participating Trusts that have invested in the same funds.

25.    NTI's duties as trustee include treating Participating Trusts in any of the Lending Index Funds equitably and impartially.

### FedEx and the RPIB Knew and Should Have Known About the Nature of the Lending Index Funds in which They Invested Plan Assets.

26.    At all times relevant to this Counterclaim, the RPIB knew and should have known, among other things, that (i) the Lending Index Funds were collective funds governed by the Declaration of Trust; and (ii) the funds could and did engage in securities lending.  The RPIB also knew and should have known that these lending index funds would lend their securities to borrowers and receive certain collateral from the borrowers in return, and that cash collateral so received would be invested in fixed-income securities.  The RPIB further knew that securities lending, including such investment of cash collateral, carried risks.  Notwithstanding their

knowledge that securities lending carried risks, the RPIB selected the Lending Index Funds for investment of Plan assets.

27.      FedEx and the RPIB were provided with copies of the Declaration of Trust and the "Fund Declarations" governing each Lending Index Fund in which FedEx invested assets of the Plan.  Each Fund Declaration provided a written description of the fund that disclosed, among other things, that: (i) the fund was authorized to engage in securities lending; (ii) NTC, an affiliate of NTI, was the securities lending agent for the fund; (iii) the lending agent would receive compensation equal to 40% of the net securities lending revenue earned by the fund; and (iv) cash collateral provided by borrowers would be invested at NTI's discretion, including in other funds managed by NTI or affiliated companies.

28.      At the time it authorized and directed each initial and subsequent investment in the Lending Index Funds, the RPIB knew that neither the Declaration of Trust nor the Fund Declarations imposed caps on the percentage of Lending Index Fund securities that could be lent. The RPIB knew that none of these documents capped the amount of Lending Index Fund securities that could be lent.  The RPIB thus authorized up to 100% of the Lending Index Fund assets to participate in securities lending.

29.      At the time it authorized and directed each initial and subsequent investment in the Lending Index Funds, the RPIB knew that cash collateral received from borrowers was invested in other investment options managed by NTI or its affiliates, such as the Core USA collateral pool.

30.      Over the period in which FedEx and the RPIB invested Plan assets in the Lending Index Funds, they received a variety of reports and other information that disclosed that the

funds were engaged in securities lending, the amount of securities on loan, and the nature of the securities in which collateral for loaned securities was invested.

31.     Among the reports and information received by FedEx and the RPIB were annual reports for the Lending Index Funds.  These annual reports were provided in accordance with § 103 of ERISA, which requires financial institutions that hold assets of a plan in a collective trust to provide the plan with an annual statement of the collective trust's assets and liabilities.

32.     The information provided in the annual reports received by FedEx and the RPIB for the years in which they invested Plan assets in the Long-Term Bond Index Lending Fund and the Russell 2000 Index Lending Fund included, among other things, the following information and data about the amount of lending in each fund (all numbers in '000s except percentages):

(i)     Long-Term Bond Index Lending Fund

| Year | Net Asset Value | Value of Securities on Loan | Percentage of Securities on Loan With Respect to Net Assets |
|------|-----------------|-----------------------------|-------------------------------------------------------------|
| 2002 | 396,679 | 316,828 | 79.87 |
| 2003 | 659,230 | 479,700 | 72.77 |
| 2004 | 1,611,727 | 1,276,924 | 79.23 |
| 2005 | 1,820,027 | 1,501,138 | 82.48 |
| 2006 | 1,723,688 | 1,540,406 | 89.37 |
| 2007 | 2,296,454 | 2,084,919 | 90.79 |
| 2008 | 2,342,395 | 2,006,869 | 85.68 |

(ii)      Russell 2000 Index Lending Fund

| Year | Net Asset Value | Value of Securities on Loan | Percentage of Securities on Loan With Respect to Net Assets |
|------|-----------------|------------------------------|--------------------------------------------------------------|
| 2007 | 8,857,745 | 3,074,471 | 34.71 |
| 2008 | 8,188,519 | 2,491,184 | 30.42 |

**FedEx and the RPIB Owed the Plan Important Duties.**

33.      In exercising their authority as the Plan Administrator and the Investment Fiduciary, respectively, FedEx and the RPIB were each required to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.  This duty applied to FedEx's and the RPIB's acts in, among other things, (i) directing NTI on how to invest plan assets, and (ii) monitoring the continuing appropriateness of those investments.

34.      With respect to the investments in the Lending Index Funds, FedEx and the RPIB were therefore required to give appropriate consideration to such facts and circumstances as the risk of loss and the opportunity for gain; the diversification of the Plan's investments, the liquidity and current return of each Separate Account relative to the anticipated cash flow requirements of the Plan as a whole; and the projected return of the Plan Fund investments relative to the funding objectives of the Plan.

35.      The duties owed to the Plan by FedEx and the RPIB included, without limitation, a responsibility to understand and assess, among other things, the structure, risks, and costs of the securities lending component of each Lending Index Fund, both when they directed NTC to

invest in such Lending Index Fund pursuant to the investment guidelines and on an ongoing basis thereafter, in order to ensure that the investments were in compliance with the terms of the Plan, the Pension Trust Agreement, and applicable statutory standards.

36.     To fulfill the foregoing functions, FedEx and the RPIB are required to obtain, consider, and maintain the requisite expertise, knowledge, and information to understand and evaluate the nature of the risks, costs, and potential returns of the investments that they authorize and direct on behalf of the Plan, including investments in Collective Funds that engage in securities lending.

<p style="text-align:center"><strong>If the Plaintiffs' Allegations Are True, FedEx and the RPIB<br>Failed to Fulfill the Fiduciary Duties that They Owed to the Plan.</strong></p>

37.     In this case, Plaintiffs allege that the acts and omissions of NTI and NTC violated fiduciary duties that NTC and NTI owed to the Plan.  NTC and NTI deny all such allegations, but if those allegations were established, in whole or in part, then FedEx and the RPIB would be wholly liable for any injuries and damages to the Plans, because as Plan Administrator and Investment Fiduciary with respect to the investments in the Collective Funds, FedEx and the RPIB were substantially more at fault than were NTI and NTC for any such injuries and damages.

38.     For example, in this case, Plaintiffs allege that the RPIB did not authorize NTC to lend assets of the Plan.  That allegation is immaterial, since NTC did not lend any assets of the Plan, and mischaracterizes the loan of assets of the Long-Term Government Bond Fund and the Russell 2000 Fund to the loan of Plan assets by NTC.  But even if the allegation were not deficient, and were true, the failure of FedEx and the RPIB to understand that the investment vehicles in which they authorized and directed NTC to invest Plan assets were securities lending funds, and that the funds engaged in securities lending, would constitute a primary and active

breach of trust and fiduciary duty by FedEx and the RPIB such that it would be substantially more at fault than NTI or NTC for any alleged injury arising from the investments.  Such a failure by FedEx and the RPIB would amount to inadequate due diligence and investigation at the time of making the investment and thereafter, and would constitute a failure to administer the trust investments diligently and prudently, and for that reason, among others, would violate the duties of FedEx and the RPIB under ERISA.

39.     In any event, FedEx and the RPIB knew, and should have known, among other things, that the Lending Index Funds participated actively in securities lending, that there were no caps on lending by the Lending Index Funds, that the Lending Index Funds invested cash collateral in a variety of fixed-income assets held in Core USA, and that the investment of cash collateral, like any other investment, carried the risk of investment losses.  Accordingly, if those investments are found to be in violation of the Trust Agreement or any duty owed by either NTC or NTI to the Plan, which NTC and NTI deny, then FedEx and the RPIB actively (i) engaged and participated in; (ii) approved, ratified, acquiesced in, or concealed; (iii) neglected to take proper steps to redress; or (iv) enabled NTC and NTI to commit, that alleged breach or imprudence, such that FedEx and the RPIB are substantially more at fault than NTC and NTI for any injury or damage arising from the investments.

40.     To the extent that the Plan has suffered losses as a result of investing in the Lending Index Funds—which NTC and NTI deny—any such losses have been directly caused by the failure of FedEx and the RPIB to act diligently and prudently in directing NTC to invest in the Lending Index Funds and in monitoring those investments, in violation of their fiduciary obligations under ERISA.  None of such losses were caused by any failure by NTC or NTI to notify or disclose to FedEx the RPIB information about (i) the Lending Index Funds; (ii) such

24

funds' securities lending activities or securities lending generally; or (iii) the risks of securities lending by such funds or generally.  Nor were any such losses caused by any lack of knowledge about such issues by FedEx or the RPIB or by any wrongful conduct by NTC or NTI.  At all relevant times, FedEx and the RPIB were aware of the information that they claim should have been disclosed to them by NTC or NTI, and nevertheless made and maintained the investments about which they complain in this case.

## COUNT I
## (INDEMNIFICATION)

41.     NTC and NTI repeat and reallege the allegations in paragraphs 1 through 40 of these Counterclaims as if fully set forth herein.

42.     NTC and NTI deny any liability with respect to the matters alleged by Plaintiffs in their Complaint and further deny that the actions or omissions alleged against them by Plaintiffs constitute violations of law, contract, or fiduciary duties under ERISA, or caused any injuries or damages to the Plan.  Nevertheless, if NTC and NTI are found liable to the Plan on any claim, it will be due to the wrongful acts or omissions of FedEx and the RPIB as alleged herein.

43.     Under Section 9.6 of the Pension Trust Agreement, FedEx agreed to indemnify NTC "against any loss or liability, including reasonable legal fees and expenses, incurred by the Trustee [NTC] solely as a result of (i) the making, retention or disposition by an Investment Manager, the Committee [the RPIB] or an Investment Fiduciary of any investment of the Trust Fund under the management and control of such Investment Manager, Committee or Investment Fiduciary; or (ii) following the direction of an Investment Manager, the Committee or an Investment Fiduciary in connection with the investment of any such asset of the Trust Fund or failing to take an action with respect to any such asset of the Trust Fund in the absence of such direction."

44.     To the extent Plaintiffs prevail on some or all of their claims against NTC and NTI, any alleged injuries or damages suffered by the Plan were caused completely and substantially by the acts and omissions of FedEx and the RPIB, as set forth above.

45.     NTC is entitled to contractual indemnification from FedEx for all such injuries and damages for which NTC may be held liable, including reasonable legal fees and expenses.

46.     Further, NTI and NTC are each entitled to equitable and implied indemnification from FedEx and the RPIB, which are the Named Fiduciary and Investment Fiduciary of the Plan, respectively, for all such injuries and damages for which NTI and/or NTC may be found to be liable because NTC and NTI have only a secondary, derivative, or vicarious liability, and FedEx and the RPIB have substantially more responsibility, for any such injuries or damages.

47.     By their acts and omissions described above, FedEx and the RPIB are also responsible for expenses, including attorney's fees and costs, incurred by NTC and NTI in litigating this action.

WHEREFORE, NTC and NTI pray for judgment in their favor and against FedEx and the RPIB in the amount of any and all costs, damages, and liabilities to the Plan that NTC and NTI may incur in this action, plus interest and attorney's fees and costs.

## COUNT II
## (CONTRIBUTION)

48.     NTC and NTI repeat and reallege the allegations in paragraphs 1 through 47 of these Counterclaims as if fully set forth herein.

49.     NTC and NTI deny any liability with respect to the matters alleged by Plaintiffs in their Complaint and further deny that the actions or omissions alleged against them by Plaintiffs constitute violations of law, contract, or fiduciary duties under ERISA, or caused any injuries or

damages to the Plan.  Nevertheless, if NTC and NTI are found liable to the Plan on any claim, it will be due to the wrongful acts or omissions of FedEx or the RPIB as alleged herein.

50.     To the extent Plaintiffs prevail on some or all of their claims against NTC and NTI, NTC and NTI are entitled to contribution from Plaintiffs under ERISA, and under federal ERISA common law, for Plaintiffs' proportionate responsibility for the injuries and damages allegedly suffered by the Plan, because any such injuries and damages were caused partially or wholly by the wrongful acts and omissions of Plaintiffs, which are the Named Fiduciary and Investment Fiduciary of the Plan, as set forth above.  Absent contribution, NTC and NTI will or may discharge more than their proportionate share of alleged liability (if any) to the Plan, which liability is either secondary or, at most, in common with the liability of FedEx and the RPIB.

51.     By their wrongful acts and omissions as set forth above, FedEx and the RPIB have caused, and will continue to cause, NTC and NTI to incur substantial costs, damages, and liabilities with respect to the matters alleged in the Complaint.

52.     NTC and NTI are therefore entitled to equitable and implied contribution from FedEx and the RPIB for all such injuries and damages for which NTC and NTI may be found to be liable to the Plan.

53.     The costs, damages, and liabilities that have been or may be incurred by NTC and NTI with respect to the matters alleged in the Complaint are, and will continue to be, in excess of any proportionate or equitable share of such costs, damages, and liabilities as may be attributable to the conduct of NTC and NTI.

54.     By the acts and omissions described above, FedEx and the RPIB are also responsible for expenses, including attorney's fees and costs, incurred by NTC and NTI in litigating this action.

WHEREFORE, NTC and NTI pray for judgment in their favor and against FedEx and the

RPIB in any amount by which their costs, damages, and liabilities to the Plan exceed

Counterclaim-plaintiffs' proportionate share of such amounts, plus interest and attorney's fees

and costs.

Dated this 6th day of July, 2009.

<div style="margin-left:40%">

Respectfully Submitted,

s/ John J. Tharp, Jr.
Caryn L. Jacobs
John J. Tharp, Jr.
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois  60606
312-782-0600

Glen Reid
Wyatt, Tarrant & Combs, LLP
1715 Aaron Brenner Dr., Ste 800
Memphis, TN  38120-4367
(901) 537-1057

*Attorneys for The Northern Trust Company and
Northern Trust Investments, N.A.*

</div>